226 A.2d 698.

HOWARD R. GARDINER *et ux. vs.* ZONING BOARD OF REVIEW OF THE CITY OF WARWICK.

FEBRUARY 23, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin, Kelleher, JJ.

682

PAOLINO, J. The petitioners brought this petition for certiorari to review a decision of the respondent board granting an application for relief from minimum lot area and side-street line restrictions. Pursuant to the writ the board certified the pertinent records to this court.

It appears therefrom that B. Thomas Potter, hereinafter referred to as the applicant, owns an unimproved parcel of land at the corner of Hillsdale avenue and Pullman Road in a residence A-7 district. The lot designated as number 85 on assessor's plat 323 has an area of 4,839 square feet, and measures 49 feet on Hillsdale avenue and 100 feet on Pullman Road.

The petitioners own land in the immediate neighborhood.

The applicant wishes to place on his undersized lot a 2½-room one-family house, measuring 24 by 28 feet, presently located two lots away on land which the state has taken by eminent domain. He proposes to use the structure for residence purposes. He filed an application on the usual form and attached thereto a copy of a plat map and a copy of a plot plan showing the proposed size of the dwelling and its precise location on the lot as well as the distances from the street and lot lines. The proposed location of the house complies with all lot-line requirements prescribed in the ordinance, excepting the required setback from the side-street lot line.

The application states the grounds on which applicant bases his request for relief as follows:

"The subject premises is less than 5,000 sq. ft. in size, to make use of it for residential use, the applicant must have the approval of the Zoning Board of Review. The strict enforcement of the Zoning Ordinance requiring 7,000 sq. ft. as a minimum lot size will result in hardship as the applicant will be deprived of the beneficial use of the land."

The applicant specifies in the application that he seeks relief under §§3.1, 3.4.3 and 14.2.2 of the Warwick Zoning Ordinance (1957) and §45-24-16 of G. L. 1956.

Section 3.1 provides that zoning affects every structure and use; §14.2.2 provides for variances; §45-24-16 of the enabling act provides for appeals to boards of review; and §3.4.3 of the ordinance provides in pertinent part as follows:

> "In any district in which dwellings are permitted, a dwelling may be erected on a nonconforming lot * * *. Where such lot * * * contain[s] less than 5,000 square feet, it shall be necessary for the owner thereof to receive from the zoning board of review a special exception for the erection of a dwelling thereon and the zoning board of review shall designate the maximum size of the dwelling to be placed thereon and its location on said lot * * *."

Section 3.4 of the ordinance provides that "A nonconforming lot is a lot of less than minimum size as defined in section 5 of this ordinance and recorded prior to June 21, 1945."

The minimum lot area in a residence A-7 district is 7,000 square feet.

Counsel for the respective parties appeared at the hearing before the board and gave their reasons for and against the application. The applicant presented two witnesses, one a real estate operator who testified that he had a buyer for the house. The other was the party who was going to move the house. The only testimony given by the latter was a description of the dwelling and the situs of its present location.

After the hearing the board granted the application subject to certain conditions not material here. It based its decision on the ground that "this would not be detrimental to the surrounding area * * *."

The petitioners' principal contention is that there is no competent evidence, express or implied, to support the

board's decision and that therefore it lacked jurisdiction to grant relief either by a special exception or a variance.

The applicant is seeking relief from two separate provisions of the zoning ordinance, the first being from the minimum lot area requirements and the second from side-line restrictions. We shall first discuss the problem raised by the request for relief from the minimum lot area provisions of the ordinance. For the purposes of this discussion we shall assume for the time being that the board's action insofar as it granted relief from lot-line restrictions is valid. However, we shall treat that issue separately after we dispose of the instant question.

Under §3.4.3 a dwelling may be erected on an undersized lot in any district in which dwellings are permitted. Dwellings are a permitted use in a residence A-7 district in which applicant's lot is located. But the ordinance provides that where such lot contains less than 5,000 square feet it shall be necessary for the owner to receive from the board a special exception permit, and additionally the board must designate the maximum size of the dwelling to be placed on the lot and its location thereon.

The petitioners' contention that the board lacked jurisdiction to grant a special exception under §3.4.3 is premised on their theory that §14.2.3 of the ordinance is applicable. Section 14.2.3 contains one of the powers vested in the board by §14.2, which is entitled "Procedure and powers." Section 14.2.3 provides:

> "In appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance where the exception is reasonably necessary for the convenience and welfare of the public."

The petitioners argue that the board made no finding that the exception was reasonably necessary for the convenience and welfare of the public; that there is no evidence in the record to support such finding by this court; and that such

a finding is a condition precedent to affirmative action by the board. There might be merit in this argument if §14.2.3 were applicable. But, as we read the ordinance, it is not applicable.

Section 45-24-13 provides that a local legislature, in enacting a zoning ordinance and providing therein for a board of review, shall provide also that such board

"may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained * * *."

Section 3.4.3 was enacted pursuant to the provisions of §45-24-13 of the act. In adopting this section the local legislature prescribed certain conditions, safeguards and conditions precedent, but a finding that "the exception is reasonably necessary for the convenience and welfare of the public" is not one of them. Compare *Monforte* v. *Zoning Board of Review*, 93 R. I. 447, 451.

There is, however, another subsection in §14.2 which refers to §3.4 and which in our judgment is applicable. We have reference to §14.2.6 of the ordinance.

As we have already stated, §14.2 relates to the procedure and powers of the board. The authority to grant special exceptions under §14.2.3 is one of the powers given to the board by the ordinance. Section 14.2.6 contains an additional power and empowers the board:

"To authorize the issuance of permits requiring approval by the zoning board of review as indicated in sections * * * 3.4 * * *."

There was no duty under the ordinance to prove that the exception was reasonably necessary for the convenience and welfare of the public. The question remains, however, whether applicant was required to do so under the provision of §45-24-13 of the act providing that special exceptions to the terms of the ordinance be made "in harmony with its general purpose and intent," which, as stated in §1 of the

ordinance, is to promote the "health, safety, morals, and the general welfare of the community." We believe the answer to this question is found in *Buckminster* v. *Zoning Board of Review*, 69 R. I. 396, 400-401, where, in considering a similar problem and the same section of the enabling act, the court said:

"The petitioners further contend that the board erred in granting Lennon's application as there is no competent evidence in the record which shows that the exception was necessary to promote the public health, safety, morals or general welfare. In other words, they argue that, according to the statute and the ordinance enacted thereunder, the board was without power to grant Lennon's application unless the evidence affirmatively established that the exception was in furtherance of the public interests. This is too restricted a view of the board's power under the statute and the ordinance."

In *Buckminster, supra,* the applicant sought an exception under sec. 16, paragraph 8, of the ordinance which, as it then read, authorized the board to "Approve in any district an application for any use or building deemed by the said Board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings permitted in such district." The court in that case held that the board had the power to grant the application if, on competent evidence, it found that the exception sought by the applicant there was not unduly contrary to the ordinance provisions for the preservation of the common interests. See also *Davis* v. *Zoning Board of Review*, 93 R. I. 484, 486.

The only reason given by the board for its action in the case at bar was that the exception "would not be detrimental to the surrounding area * * *." The board's reason for its decision indicates that it considered the public interest in granting the exception. In our opinion the decision of the board, when read in connection with the information in the application and on the plot plan, shows that,

in its judgment, the granting of the exception under §3.4.3 was not unduly in conflict with the public interest as expressed in the ordinance. See *Buckminster, supra,* at page 400. We believe that the information in the application and on the plot plan was competent evidence from which the board could reasonably infer that the exception sought would not unduly conflict with the public interest. Such information tells the whole story; it gives the dimensions and area of the lot; it shows the size of the home and its precise location on the lot; and it shows the distances from the front and side-street lines as well as from the side and rear lot lines. From this information the board could reasonably infer, as in fact it did, that the exception was not detrimental to the surrounding area, which in our opinion is equivalent to a finding that it would not unduly conflict with the appropriate use of neighboring property.

Section 3.4.3 requires the board to designate the maximum size of the dwelling to be placed on the lot and its location thereon. The petitioners argue that the board has failed to comply with this condition. It is true, as petitioners assert, that the board did not expressly include the condition in question in its decision. However, the application and the plot plan attached thereto show the maximum size of the house as well as its precise location on the lot. In granting the application the board of necessity incorporated the application and the plot plan in its decision; this could only mean that it was granting an exception permitting the erection of the house described on the plot plan in the exact location indicated thereon. While we agree that the board's decision would be clearer had it expressly included such condition therein, we cannot say that the board has failed to designate the maximum size of the dwelling to be placed thereon and its location on the lot.

We come now to the question raised by applicant's request for relief from the side-street lot-line requirements. The petitioners contend that there is no evidence in the

record to support a finding that denial of the relief requested would deprive applicant of all beneficial use of his land and that granting the same would not be contrary to the public interest.

In the case at bar a dwelling is a permitted use on the lot in question, subject, of course, to the conditions of §3.4.3. Because it is an undersized corner lot, applicant seeks relief from the ordinance restrictions in order that he may erect thereon the house described in the application and plot plan. In our judgment the rule established in *Viti* v. *Zoning Board of Review,* 92 R. I. 59, is applicable here. This is not an application for a true special exception or variance and therefore the applicant is not required to prove a loss of all beneficial use. *Viti, supra,* at page 64. As the court said in *H. J. Bernard Realty Co.* v. *Zoning Board of Review,* 96 R. I. 390, 395:

> "* * * the provisions of the enabling act, G. L. 1956, §45-24-19 b and c, or of municipal ordinances setting forth the burden of proof on an applicant for a special exception or variance, respectively, relate to the proof required when the application is for a change in the permitted use. Exacting as these standards are when application is made for a true special exception or variance, they are not the applicable standards when the relief sought is from building regulations as distinguished from limitations on use. Certainly they may be a guide to the board in determining from all the evidence whether the relief from building regulations should be granted, but strict conformity therewith is not required. See *Reynolds* v. *Zoning Board of Review,* 96 R. I. 340."

In *Bernard Realty Co., supra,* at page 394, we said in substance that on applications for this type of relief a property owner must show "more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience." We stated there that "There must be a showing of an adverse effect amounting

to more than mere inconvenience." And in *Travers* v. *Zoning Board of Review,* 101 R. I. 510, 225 A.2d 222, the majority of this court affirmed the board's grant of relief on the ground that the record warranted a finding that the denial of the application would create an adverse effect upon the applicant's land amounting to more than mere inconvenience without at the same time serving any public interest.

The petitioners contend that there is an absence of affirmative evidence to support the board's finding that the requested relief would not be detrimental to the surrounding area. We have already answered this contention in discussing the special exception aspect of this case where we said in substance that the board could reasonably infer from the information it had that the relief requested would not unduly conflict with the public interests, as expressed in the ordinance, and that the appropriate use of neighboring property would not be substantially or permanently injured.

In our opinion the information in the application and on the plot plan is competent evidence to support a finding that a denial of the application would cause an adverse effect to applicant's use of his land amounting to more than mere inconvenience to him without at the same time serving any public interest. *H. J. Bernard Realty Co., supra.*

Under the pertinent provisions of the ordinance the minimum depth of front yard and any corner side yard is 25 feet; the minimum width of the side yards is 8 feet; and the minimum depth of rear yards is 20 feet. The dwelling measures 24 feet in width and 28 feet in depth. The applicant can comply with front and rear yard requirements, but as a practical matter it is not possible for him to comply with both the side line and side street requirements on the lot in question. On this record there is implicit in the board's decision, (1) a finding that the relief requested would not unduly injure or interfere with the appropriate

use of neighboring property, and (2) a further finding that "such relief was reasonably necessary for the full enjoyment of a permitted use." *H. J. Bernard Realty Co., supra,* at 395.

The Warwick ordinance provides in §14.2.2 that "The unnecessary hardship which an applicant seeks to avoid shall not have been imposed by any prior action of the applicant." The petitioners, in reliance on this ordinance provision, contend, in substance, that applicant's hardship, if any, was self-imposed and therefore did not entitle him to relief. There is no merit in this contention. The petitioners gain nothing from such ordinance since the power to grant variances is a direct grant of authority from the legislature to boards of review and can be neither enlarged nor restricted by provisions contained in local ordinances. *Mello* v. *Board of Review,* 94 R. I. 43, 47; *Lincourt* v. *Zoning Board of Review,* 98 R. I. 305, 309, 201 A.2d 482, 485.

The fact that applicant knew he had an undersized lot before he acquired the house is immaterial. In *Denton* v. *Zoning Board of Review,* 86 R. I. 219, 223, in discussing a true variance, the court said:

> "The question of whether an applicant is entitled to a variance because of hardship flowing from a literal application of the terms of the ordinance is in no way dependent upon his knowledge or lack of knowledge of the existence of zoning restrictions affecting the land. The test of one's right to a variance under the act is whether unnecessary hardship would result from a literal application of the pertinent terms of the ordinance."

We believe that the court's statement in *Denton, supra,* applies equally to a request for a deviation from lot-line restrictions, except that in the latter situation proof of loss of all beneficial use of one's property is not required.

For the reasons stated we hold that the board did not act arbitrarily or in excess of its jurisdiction in granting the application.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records which have been certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Hendel, Strauss & Surdut, Conrad K. Strauss, Raymond J. Surdut,* for petitioners.

*James R. Morriss,* City Solicitor, *Howard R. Haronian,* Assistant City Solicitor, for respondent board.