243 A.2d 99.

Luis Raposo *et ux. vs.* Zoning Board of Review of the Town of Middletown.

Same *vs.* Same.

JUNE 20, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Paolino, J. These are two separate petitions for certiorari to review certain actions taken by the zoning board of review of the town of Middletown. By stipulation the petitions were consolidated for hearing before us. Pursuant to the writs the pertinent records have been certified to this court.

The record reveals the following pertinent facts. Newport Lodge No. 1040, Loyal Order of Moose, a Rhode Island corporation, hereinafter referred to as the applicant, owns a parcel of land consisting of three adjoining lots of unimproved land having a total area of approximately 25,000 square feet and located on Reservoir Road at its intersection with Aquidneck Avenue. The petitioners, Luis and Mary Raposo, are abutting property owners. The

applicant's land, as well as that of petitioners and all other abutting property owners, is located in an area zoned as a business district under the zoning ordinance.

Pursuant to its plans to erect a lodge and club building on its land the applicant simultaneously filed two separate applications with the board. In one, entitled "Petition for Variance And/Or Exception," it requested that it be granted a variance from front yard depth requirements. Specifically it requested that it be granted a variance

> "To allow a minimum front yard depth of 27 feet instead of 50 feet as required by Art. II, Sec. 3B (2) of the Zoning Ordinance, Town of Middletown, as amended."

In the other, entitled "Petition For Determination of Lot Areas and Frontages necessary to provide sanitary sewage disposal," applicant requested that a finding be made:

> "To determine lot areas and frontages necessary to provide sanitary sewage disposal in accordance with the requirement of Article II, Section 3B(2) of the Zoning Ordinance, Town of Middletown, as amended."

Under art. II, sec. 3 A.7., a lodge and club building is a permitted use in a business district, subject to off-street parking requirements set forth in art. II, sec. 5, of the zoning ordinance. Insofar as here pertinent, art. II, sec. 3 B.2., provides that

> "In Districts without Public Sewers the minimum lot areas and frontages shall be such as the Board of Review shall determine to be necessary to provide sanitary sewage disposal in view of the size and type of contemplated business establishment. The minimum front yard required shall be 50 feet in depth * * * ."

A front yard is defined in art. I, sec. 5, of the ordinance as follows:

> "Front Yard—A 'front yard' is an open unoccupied space extending across the full width of the lot between the front lot line and that part of the front wall of the

principal building nearest thereto. A lot shall be considered to have a front yard along every public street or way on which it abuts, except that no business lot shall be considered to have more than one front yard. If any business lot abuts more than one public street or way, the front yard shall be provided along the street or way where its main entrance is located."

At the commencement of the hearing before the board, petitioners made two motions. In one they moved that applicant be required to make an election as to whether it was requesting a variance or an exception. In the other they moved for dismissal of the petition for determination of lot areas and frontages on the ground that the section of the ordinance purporting to invest the board with such power was invalid. The board took both motions under advisement and proceeded with the hearing during which testimony was elicited for and against the application.

At the conclusion of the hearings, which took place on four different evenings, the board rendered a written decision denying petitioners' two motions and granting both applications. We note here that the decision merely records the vote of the board. It contains no findings of fact and no reasons for the action taken by the board. With regard to the applications, the decision reads as follows:

"Upon motion of Mr. Ward, seconded by Mr. Hatch, the Board of Review voted unanimously to grant the request of the Loyal Order of the Moose for a variance as shown on Plan A—the Preferred Plan, as submitted,"

and

"Upon motion of Mr. Gaudet, seconded by Mr. Hatch, the Board of Review voted unanimously to approve the request for a determination of lot area and frontages by the Loyal Order of the Moose stating that the lot area was sufficient to take care of the sanitary sewage disposal system."

The decision contains similar statements with regard to the denial of the two motions.

Thereafter petitioners timely filed their petition for certiorari, case No. 323 - M. P., to review the board's action in granting the applications and denying their motions. They also filed a motion for a restraining order, seeking a stay of proceedings pending disposition of their petition for certiorari by this court. We denied their motion for a restraining order.

It appears from the record that after the board rendered its decision granting the applications, the applicant applied to the building inspector for permits to construct a lodge and club building and to install a septic tank system for sewage disposal on the land in question. The building inspector granted the permits and petitioners thereupon filed an appeal with the zoning board from the issuance of the permit to construct "a lodge & club" building on the ground that adequate off-street parking spaces for automobiles was not provided as required by the zoning ordinance.

When the appeal was reached for hearing, the board informed petitioners that it had decided, upon advice from the town solicitor, and over petitioners' objection, to dismiss their appeal, without prejudice, until a decision was handed down by this court in case No. 323 - M. P. Following the board's ruling, petitioners filed in this court their second petition for a writ of certiorari, case No. 370 - M. P., in which they attack the legality of the board's action in dismissing their appeal without a hearing.

The petitioners have briefed and argued their appeals under several main points. After examining all of their contentions in the light of the entire record we have come to the conclusion that the case at bar is governed by the rules set forth in *H. J. Bernard Realty Co.* v. *Zoning Board of Review,* 96 R. I. 390, 192 A.2d 8, and followed in all

cases after *Bernard, supra,* dealing with the problem before us;[1] that the applicant has failed to satisfy the *Bernard* test; and that therefore the board erred in granting the front yard variance. In the circumstances we confine our discussion to a consideration of petitioners' contention that the board's decision granting the requested lot-line variance is against the law and the evidence. They contend that the evidence shows that the applicant can comply with the lot-line provisions of the ordinance and fails to show that adherence to the lot-line regulations would produce an adverse effect upon the use of the applicant's property amounting to more than mere inconvenience.

In *Bernard, supra,* we said at page 394, 192 A.2d at page 11:

"We did not hold, however, as petitioner seems to infer, that on application for such relief a property owner need show no more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience.

"There must be a showing of an adverse effect amounting to more than mere inconvenience. * * * "

That is, an applicant for relief from lot-line requirements must show that such relief is reasonably necessary for the full enjoyment of a permitted use.

With these rules in mind, we examine the relevant evidence in the case before us. It appears from the record that two of the exhibits presented in evidence by the applicant are of particular importance in the resolution of this case. Exhibit 1, sometimes referred to as plan A, is Drawing No. 317-20, entitled "New Home For Newport Lodge No 1040 Loyal Order of Moose Site Plan & Foundation Plan."

---

[1] *Travers* v. *Zoning Board of Review,* 101 R. I. 510, 225 A.2d 222; *Gardiner* v. *Zoning Board of Review,* 101 R. I. 681, 226 A.2d 698; *Westminster Corp.* v. *Zoning Board of Review,* 103 R. I. 381, 238 A.2d 353; *DiDonato* v. *Zoning Board of Review,* 104 R. I. 158, 242 A.2d 416.

It shows the proposed location of the club building on applicant's land and indicates that a variance from the 50-foot front yard restriction is required for permission to erect the building as laid out on this plan. The applicant sought, and was granted, a variance to erect the proposed building in accordance with plan A.

The second exhibit referred to above, sometimes called plan B, is exhibit 4. This exhibit is Drawing No. 317-20, entitled "New Home For Newport Lodge No 1040 Loyal Order of Moose Site Plan & Foundation Plan." This plan is an alternate site plan drawn in with India ink showing a different location for the building. It contains a notation "Plan B 50′ set back From Reservoir Rd." We note in passing that both plans indicate that the proposed building would front on Reservoir Road and that the main entrance would be on Reservoir Road. As located on plan B the proposed building would comply with all lot-line requirements of the zoning ordinance; the applicant concedes this to be so.

Thus, it is undisputed that applicant could erect the proposed building in compliance with the ordinance requirements. The only evidence presented by applicant concerning the issue we are now discussing is the testimony of John Desantis, the chairman of applicant's housing committee. He testified that from the standpoint of safety, due to traffic conditions on Aquidneck Avenue, it would be most advantageous to have the driveway on the Reservoir Road side. It appears from an examination of exhibits 1 and 4 (plans A and B) that the location of the proposed driveway is on Reservoir Road in both plans. Since the applicant could erect the building in compliance with the ordinance requirement and still locate the driveway on Reservoir Road, the aforesaid testimony of Mr. Desantis is not relevant to the application for a variance from the front yard restrictions.

In attempting to support the rationale for locating the proposed building in accordance with plan A, rather than plan B, Mr. Desantis pointed out that compliance with the latter plan would cause the front of the building to face right into the side of Mr. Raposo's property, all to his detriment. He said further that were the patio on the southerly side of the building utilized, Mr. Raposo would be faced with having the patio adjacent to his property line. He concluded his argument for a building in accordance with plan A by stating that the Aquidneck area and the Middletown people would derive aesthetic benefits from such a location. He summarized his own feelings by saying: "We feel that this [plan B] would be an inadequate positioning of that building on that property, both for us, and for the town, and for our lodge."

The sum and substance of this testimony is that locating the proposed building on its land as indicated on plan A would benefit the abutting property owners, the surrounding area and the town. This evidence, standing alone, does not warrant the type of relief that applicant seeks. The applicant presented no evidence to show that it would suffer more than mere inconvenience by being required to comply with the lot-line requirements of the ordinance or that the requested relief was reasonably necessary for the full enjoyment of its premises. *Bernard, supra; DiDonato, supra.* There is therefore no evidence in this record on which the board's decision granting the variance can reasonably rest. In the absence of competent evidence showing either an adverse effect amounting to more than mere inconvenience or that the requested relief was reasonably necessary for the full enjoyment of its land by the applicant, we hold that the board's action constituted an abuse of discretion and must be quashed.

Under art. II, sec. 3 B.2., the board is authorized, in districts without public sewers, to determine the minimum lot

areas and frontages necessary to provide sanitary sewage disposal " * * * in view of the size and type of contemplated business establishment." In view of our conclusion with regard to the requested variance, it follows that the board's decision determining the minimum lot areas and frontages must also fall because there is no " * * * contemplated business establishment" for the board to use as a guide.[2] In the circumstances it becomes unnecessary to consider any of petitioners' remaining contentions in case No. 323 — M. P.

We come now to the petition in case No. 370 — M. P. The applicant applied for, and was granted, a permit by the building inspector to erect a lodge and club building in accordance with plan A. In view of our decision invalidating the board's decision authorizing the applicant to erect a lodge and club building in accordance therewith, it likewise follows that the permit issued by the building inspector is null and void.

In each case, the petition for certiorari is granted, the decision of the respondent board is quashed, and the records are ordered returned to said board with our decision endorsed thereon.

*Umsted & Going, Joseph B. Going,* for petitioners.

*Corcoran, Peckham & Hayes, Edward B. Corcoran,* Town Solicitor of Middletown, for respondent.

---

[2]On this record we do not reach, and therefore do not decide, the question of the validity of the board's power to determine minimum lot areas and frontages under art. II, sec. 3 B.2.