[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review for the Town of Lincoln (hereinafter "Board"). Star Enterprises ("Star") seeks a reversal of the Board's December 3, 1991 decision sustaining a cease and desist order issued by Lincoln's Building Inspector. This Court's jurisdiction is pursuant to Rhode Island General Laws 1956 (1988 Reenactment) §45-24-20.
Plaintiff Star is a partnership comprised of Texaco Refining and Marketing, and Sadi Refining. Prior to March 6, 1990 Star owned and operated a self-service gasoline station at 1789 Old Louisquisset Pike, the subject premises. The premises, also identified as Assessor's Plat 43, Lot 78, is within an RS-20 zone. Being so situated, Star's property was a legal, nonconforming use. On March 6, 1990 the Board heard Star's petition for a variance allowing Star to change the premise's use from a self-service gas station to a gas station-convenience store, the store being placed where auto repairs once took place.
Testifying on Star's behalf at the March 6, 1990 meeting were Mark Brady, a real estate agent for Star; Sandra Carlson, an expert in real estate and; James Cronin, a professional engineer and expert in traffic engineering. Mr. Louis Innuccillo, then attempting to lease as a convenience store property he owned in the vicinity of Star's, objected to the application. At the conclusion of the hearing, Star's application was granted by a 4-1 vote of the Board. In granting the application, the Board held that Star's Convenience Store would neither create a nuisance nor hinder future growth of the Town. (March 6, 1990 letter from Zoning Board).
On September 5, 1991 Robert Schultz, the Town Building Inspector and Director of Public Works, ordered Star to cease and desist operation of the convenience store/gas station at any time other than the hours of 6:00 a.m. — 10:00 p.m. daily. Mr. Schultz also ordered that Star cease and desist operation of a deli counter within the store. On September 18, 1991 Star filed with the Zoning Board an appeal of Mr. Schultz's order.
At the November 5, 1991 meeting of the Board, the issues raised related to whether 6:00 a.m. — 10:00 p.m. operating hours were a condition of the variance granted in March, 1990, and whether a deli counter was disclosed to and approved by the Board.
At the hearing Star presented two of its employees. First, Roger Salman, a real estate agent for Star, testified that prior to the March 6, 1990 variance, the station's hours of operation were 6:00 a.m. to midnight. Mr. Salman further testified that the deli was operated in conjunction with the convenience store. Next to testify was Christine Stanley, a marketing representative for Star. Ms. Stanley's testimony focused on the fact that both prior to and after March 6, 1990 the plaintiff had maintained a "victualling" license for the premises.
Speaking in opposition to Star's appeal were Robert Schultz, Councilman Robert Jensen, and several area residents. Each testified as to the current operating hours, and the noise and light emanating from the premises. Mr. Schultz also gave his understanding of conditions associated with the March, 1990 variance. As concerned closing time, Mr. Schultz placed his reliance on the March 6, 1990 testimony of Mark Brady. Mr. Brady had testified that
 Hours of operation are from 6:00 a.m. — 10:00 p.m. We've tried and we're allowed to open until midnight and, quite frankly, we found that there's no real warrant to open at that hour. There may be during the summer; in the winter . . . There just isn't that kind of business. (March 6, 1990 Transcript, p. 13).
Mr. Owen Regan of 1787 Louisquisset Pike testified, inter alia, that prior to the renovations approved in March, 1990, the gas station was not open until midnight; rather it closed at 10:00 p.m. Mr. Regan had lived at that address for eight years.
In order to review the transcript of the March 6, 1990 Board meeting, the Board continued the hearing until December 3, 1991. At the December hearing, the Board voted to uphold the cease and desist order. See R.I.G.L. § 45-29-19(2). The basis for the Board's decision was their belief that Star had in fact violated conditions of the March 6, 1990 variance.
When reviewing a zoning board decision this Court is constrained by R.I.G.L. 1956 (1988 Reenactment) § 45-24-20, which provides in pertinent part as follows:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions;
 (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Importantly, when conducting its review this Court must review "the whole record to determine whether the findings of the zoning board were supported by substantial evidence." Toohey v.Kilday, 415 A.2d 732, 735 (R.I. 1980). Substantial evidence means more then a scintilla, but less than a preponderance. It must be relevant evidence that a reasonable mind could find adequate to support a conclusion. Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981). The Court is not empowered to substitute its judgment for that of the Board's unless substantial evidence does not exist. Apostolou v.Genovesi, 120 R.I. 501, 506, 388 A.2d 821 (1978). Thus, this Court will not assess the credibility of witnesses, weigh evidence, or make its own finding of fact. See Lett v.Caromile, 510 A.2d 958, 960 (R.I. 1986).
Plaintiff argues that a review of the whole record supports the plaintiff's contention that no valid restriction exists as regards closing time and/or operating a deli counter. The Court will first address the closing time issue and next the deli counter.
At the March 6, 1990 hearing, Star's representative, Mark Brady, testified that the hours of operation were from 6:00-10:00 p.m.. Mr. Brady added that the plaintiff's had tried being open later but business did not warrant the extended hours. March 6, 1990 transcript, p. 13. He did add the caveat that summer months might provide the demand for additional operating hours.[1]Id.
Mr. Shultz, who issued the cease and desist order, testified that his office interpreted the Board's decision as accepting the 10:00 p.m. closing as a condition of the variance. Id. at 14, 15. At the December 3, 1991 hearing Board Chairman William Reid stated that it was the general belief of the Board that Mr. Brady had alluded the closing time would be 10:00 p.m. Tr. p. 1-2. Board Member Paul Lussier stated that the midnight closing was a violation of the condition of the March, 1990 variance. December 3, 1991 transcript, p. 16. Ultimately, the Board voted to uphold the Building Inspector's interpretation of the variance.
It is well settled that zoning boards may impose reasonable conditions upon the grant of a variance, see R.I.G.L. 45-24-19;Town of Warren v. Frost, 111 R.I. 217, 301 A.2d 572 (1973). In order to resolve if a 10:00 p.m. closing time was a condition to the Board's grant, this Court must examine whether the alleged condition was set forth with specificity and clarity. Warren v.Frost, 111 R.I. at 220, 221; Olevson v. Zoning Board ofReview, 71 R.I. 303, 44 A.2d 720 (1945). Here, it plainly was not. Nowhere in the Board's decision does it appear that the Board expressly intended to impose a 10:00 p.m. closing time as a condition to the variance. In fact, this same lack of manifestation of intent to impose such a condition is borne throughout the record.
As aforementioned, slight mention of closing time was made at the March 6, 1990 meeting. (Tr. 13, 2). However, these remarks, while potentially probative of Star's intentions, do not evidence the Board's imposing such a condition on the grant of the variance, See Front, 111 R.I. 220.
Thus, because the record lacks substantial evidence, or any evidence susceptible of a reasonable inference that the March 6, 1990 zoning board decision imposed a 10:00 p.m. closing time on Star, this portion of the Board's November 5, 1991 decision must be reversed.
Next, the plaintiffs argue that the deli counter is not a violation of the variance granted on March 6, 1990. In support of their contention, the plaintiffs cite testimony, as well as exhibits, from the March 6, 1990 hearing. Noteworthy is the fact that the actual plan submitted to the Zoning Board included a deli counter. Additionally, at several junctures, Star's employees stated that the store would sell food items, hot coffee, and sandwiches. See March 6, 1990 Transcript, p. 14, 19. Further, at the time the variance was granted, Star had already obtained a victualling license.
The Board has argued that Star's receipt of the March 6, 1990 variance permits only those activities and uses ratified. Here, Star identified a deli counter as part of its restoration program. While the record bears no evidence that the word "deli" was ever used at any time other than in the appellant's plans, several references are made that logically infer such a use. See March 6, 1990 transcript p. 14, 19. Moreover, the plan that the Board approved was the same plan the Building Inspector approved prior to issuing the necessary permits.
Our Supreme Court has ruled that information contained on a zoning application or plan constitutes competent evidence.Gardner v. Zoning Board of Review, 101 R.I. 681, 226 A.2d 698
(1967). In fact, the information contained in Star's plan, along with the aforementioned testimony, "tell[s] the whole story."Gardner, 101 R.I. at 688, 226 A.2d at 702. The deli counter was presented as part of Star's proposal. Nevertheless, the Board determined that the March 6, 1990 decision did not authorize the deli. In view of the reliable, probative, and substantial evidence contained in the record and more specifically set forth above, the Court finds this portion of the Board's decision clearly erroneous.
After a thorough search of the record, this Court finds the record to be devoid of competent evidence upon which the Board's decision may rest. Because the Board's December 3, 1991 decision is bereft of the necessary substantial evidentiary support, it must be reversed. Apostolou v. Genovesi, 120 R.I. 501, 506,388 A.2d 821 (1978). Accordingly, the Board's cease and desist order as relates to both closing time and the deli counter is hereby reversed.
Counsel shall prepare an appropriate order for entry.
[1] The transcript from the March 6, 1990 hearing credits Mr. Brady with the aforementioned testimony. However, the minutes from the hearing state that plaintiff's traffic expert, Mr. Cronin, made these remarks. After reviewing the record these remarks clearly are ascribable to Mr. Brady.