[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
This appeal arises out of a July 24, 2003 decision of the Middletown Zoning Board granting a dimensional variance for relief from the side line setback and lot coverage requirements of the Middletown Zoning Ordinance. ("Ordinance"), to William and Geraldine Weir. Review is pursuant to G.L. 1956 § 45-24-69.
 FACTS
Barbara Alpert ("Appellant") is appealing a decision of the Town of Middletown Zoning Board ("Board") granting Defendants William and Barbara Weir ("Applicants" or "Weirs") three variances to build a home on a parcel of land located in a neighborhood known as the Esplanade. The parcel is identified as Assessor's Plat 116NE, Lot 94, and is located at 71 Tuckerman Ave., Middletown, R.I. The subject parcel is a substandard, nonconforming lot having an area of 6,428 square feet. (Record, Ex.4,[1] "Petition for Variance" Plot Plan and Building Plans). The applicable Ordinance provision requires 10,000 square feet. See Town of Middletown Zoning Ordinance § 603 [hereinafter Ordinance]. The lot is rectangular in shape, being 50 feet wide and 127.8 feet in depth. (Record, Ex. 4).
At the hearing, the Weirs submitted a plan of a home that they could build consistently with the Ordinance's setback and lot coverage requirements.[2] This home — "the freight-car design" as Appellant's attorney termed it because of its odd shape, (Tr. at 13 (Apr. 22, 2003)) — would be 20 feet wide by 72 feet long. The designed home would be three stories high, with four bedrooms, a library, kitchen, living room, and four and half baths. However, the Weirs desired a home of a more conventional shape, consistent with those of the surrounding neighborhood. Therefore, they submitted an application for relief from the Ordinance's setback and lot coverage requirements. They did not expressly request a variance from the Ordinance's lot size requirement; although the submitted plans indicated that the lot was substandard.
On the rear side of the home, where a 30 foot setback is required, Ordinance § 603, Applicants proposed a 24 foot setback. Though they proposed to exceed the front yard setback by four feet, the home was situated closer to the rear of the lot in order to protect the neighbors' ocean views, and so that the home would be situated evenly with the neighbors. (Testimony of Geraldine Weir, Tr. at 8 (Dec. 17, 2002)); (Testimony of Architect JamesWeir, Tr. at 31-32 (Dec. 17, 2002)). Applicant's also proposed a twelve foot setback from the southern side lot line, i.e. that bordering Appellant's property, and a six-foot setback from the north side lot line. The Ordinance requires side line setbacks of 15 feet. Ordinance § 603. Geraldine Weir testified that the difference in the proposed side line setbacks was made in order to center the home between that of Appellant and that of the northerly neighbor ("Balducci property"). (Tr. at 9 (Dec. 17, 2002)).[3] Applicants also requested a lot coverage variance because the proposed residence would comprise 30.9% of the lot area, though the Ordinance provides for 25%.Ordinance § 603. Because of the close proximity of her own home to the lot line, Appellant challenged Applicants' request.
The plans of the proposed home depict an L-shaped home 95 feet in length and 32 feet in width at one end and 24 feet at the other. (Record, Ex. 18). The first floor of the proposed home contains a combined living room/dining room measuring 17 × 31 feet — "the size of many just living rooms," according to James Weir, Applicants' architect. (Tr. at 6 (Apr. 22, 2003)). Six of the 31 foot width, however, is labeled as "Entrance Hall" on the submitted plans. This hall passes through the entire first floor. The first floor also contains a kitchen, a guest bedroom with full bath, a half-bath, a laundry room, and a one car garage. The second floor contains a master bedroom, approximately 16 by 19 feet; a master bath; a study, approximately 12 × 11 feet; two "dressing" rooms, slightly less than 7 by 12 feet each; and two guest bedrooms, each with a separate bath.
When asked whether the Entrance Hall on the first floor could be reduced to a four foot width, thereby increasing the south side setback from twelve to fourteen feet, James Weir testified that it was not feasible because "the living area requires more than the twelve foot dimension . . . The living room will take up part of that corridor." (Tr. at 18-19 (Apr. 22, 2003)). Also, he noted, the second floor design does not incorporate the wide hall. Nonetheless, the Alperts' attorney attempted to elicit testimony that the second floor could be designed to eliminate the required three foot variance from the side lot line adjoining thee property to the Alperts' property. Architect Weir responded that "[w]e have designed a 20-foot-wide-house, and that's not — we don't think it's the best thing for the neighborhood. Could somebody live in it? Yes . . . but I think a house that's only 17 by 31 for both living room and dining room is not excessive by any suburban standards." Id. at 22. He further explained that "many, many living rooms are that large by themselves, and what if my clients want a grand piano. You can't even put a grand piano in there or even a regular piano." Id. at 23. He also testified that the Weirs — his brother and sister-in-law — have children and grandchildren, necessitating the inclusion of guest bedrooms for summer use. He opined that "[t]his is not an eight-bedroom, luxury house. This is a three-bedroom,[4]
very normal, compact house . . ." Id. at 24. Architect Weir suggested that the Board's task was to determine whether "it is unreasonable to have a living room and dining room that's 31 feet wide, and I think that's a relatively small living and dining room." Id. 22-23.
Applicants also presented a real estate expert who testified as to the average dimensions of neighboring homes and to the compatibility of the Weirs proposed home with these. He further testified that the project requested the least relief necessary, "if that definition is you want to do a structure that is compatible with the neighborhood, that preserves and enhances the values there . . .," (Tr. at 43 (Apr. 22, 2003)), although he conceded that "[i]t isn't the physical minimum." Id. at 44.
At the conclusion of the hearings, at the instigation of Board member Peter Vansteeden, Applicants agreed to amend the application by eliminating four feet from the width, while retaining the shape of the home, in order to eliminate the south side line variance (which appeared to be Appellant's sole concern). On July 24, 2003, the Board granted the amended petition, incorporating the reduction in the form of two conditions, i.e., that the home not exceed 29 feet and that it not be located closer than 15 feet to the southerly property line.[5] Despite this attempt at appeasement, however, Appellant has timely appealed to this Court.
 STANDARD OF REVIEW AND APPLICABLE LAW
Rhode Island General Laws 1956 § 45-24-69 vests the Superior Court with jurisdiction to review a zoning board's grant of an application for a variance. Section 45-24-69(d) provides:
 "The [Superior] Court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1 In violation of constitutional, statutory, or ordinance provisions;
 (2 In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3 Made upon unlawful procedure;
 (4 Affected by other error of law;
 (5 Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6 Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
"Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means [an] amount more than a scintilla but less than a preponderance." Lischio v. Zoning Bd. of Review of the Town ofNorth Kingstown, 818 A.2d 685, 690, n. 5 (R.I. 2003) (quotingCaswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981).
When seeking a dimensional variance, the applicant bears the burden of production and persuasion as to why such relief is warranted. DiIorio v. Zoning Bd. of Review of East Providence,105 R.I. 357, 362, 252 A.2d 350, 353 (1969). Consequently, when applying for a dimensional variance, the applicant is required to demonstrate to the zoning board:
 (c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 * * *
 (d)(2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. G.L. § 45-24-41.
Subsection (d)(2) of § 45-24-41 was amended in 2002 to eliminate the definition of "mere inconvenience" as meaning "that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." See P.L. 2002, ch. 384, § 1. Our Supreme Court has interpreted the 2002 amendment as reinstating the judicially created Viti Doctrine. Lischio,
818 A.2d at 691. See Viti v. Zoning Bd. of Review of Prov.,92 R.I. 59, 64-65, 166 A.2d 211, 213 (1960).[6] A property owner, therefore, is no longer required to demonstrate that she "can [not] enjoy a legally permitted beneficial use of the property without the proposed variance." Sciacca v. Caruso,769 A.2d 578, 583, n. 6 (R.I. 2001). However, the Applicant must nonetheless prove that the requested relief is the least relief necessary. See § 45-24-41(c)(4); Lischio, 818 A.2d at 692 ("in order for a request for a dimensional variance to be granted the applicant must satisfy the requirements for both §45-24-41(c) and (d)(2)"). It is clear that the Legislature in retaining this requirement — while deleting an applicant's burden of proving no reasonable, permitted alternative that would conform to the relevant ordinance — intended to ensure that variances not be given out haphazardly. As our Supreme Court, applying Viti, once said,
 "applications for relief from lot-line regulations are addressed to the sound discretion of boards of review whose authority to act favorably is limited to the extent of relief demonstrated to be reasonably necessary to the enjoyment of the permitted use sought to be served. Absent such demonstration, a decision relieving land of building, lot-line and height restrictions is arbitrary and constitutes an abuse of discretion." Lincoln Plastic Prods. v. Zoning Bd. of Review of the Town of Lincoln, 104 R.I. 111, 115, 242 A.2d 301, 303 (R.I. 1968).[7]
Thus, a landowner who succeeds in proving that the requisite hardship will result form full conformance to the zoning ordinance is not given a "blank check" to prescribe how much relief he or she will get, so long as that relief does not alter the character of the neighborhood, G.L. § 45-24-41(c)(3). Rather, a request for a variance must be supported by reliable, substantial, and probative evidence that the proposal requires the least relief necessary to accommodate the permitted use sought therein. G.L. § 45-24-41(c)(4).
The showing necessary to obtain a dimensional variance is that the landowner would suffer an adverse impact amounting to more than a mere inconvenience. Felicio v. Fleury, 557 A.2d 480, 482 (1989) (citing Gara Realty, Inc., 523 A.2d 855, 858 (R.I. 1987); DeStefano v. Zoning Board of Review of Warwick,122 R.I. 241, 246, 405 A.2d 1167, 1170 (1979); Viti, 92 R.I. at 65, 166 A.2d at 214. When determining the propriety of a zoning board's grant of a dimensional variance "[t]his test must be applied reasonably and realistically." Travers v. Zoning Bd. of Reviewof Bristol, 101 R.I. 510, 514, 225 A.2d 222, 224 (1967). The hardship, however, must not stem "from the desire of the applicant to realize greater financial gain," G.L. §45-24-41(c)(2). Further, an applicant must show "more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience." H.J. Bernard Realty Co.,Inc. v. Zoning Board of Review of the Town of Coventry,96 R.I. 390, 394, 192 A.2d 8, 11 (1963). For example, the fact that land located within a residential zone could not be used for a dwelling if lot size or setback requirements were enforced has been held to satisfy the more than a mere inconvenience standard.See DeStefano v. Zoning Board of Review of Warwick, 122 R.I. at 246, 405 at 1170; Gara Realty, Inc., supra.
 ANALYSIS
I. The Board's Conclusion that Applicants Faced A Hardship Amounting to More than a Mere Inconvenience, Absent Zoning Relief, was Clearly Erroneous in View of the Reliable, Probative, and Substantial Evidence of the Whole Record, Was Affected by Error of Law, Was in Violation of Statutory and Ordinance Provisions, and Was Characterized by an Abuse of Discretion.
One basis of the Weirs' alleged hardship is their desire for enough first floor living space should they be sequestered there in their old age. However, § 45-24-41(c)(1) strictly limits what types of disabilities may be considered in determining whether a variance is appropriate. Old age and speculative disabilities are not included. Id. See also 3 Rathkopf, The Law of Zoningand Planning, § 58:20 (2003) ("[h]ardship must relate to some characteristic of the land for which the variance is requested, and must not be solely based on the needs of the owner"). Further, Applicants submitted design of a 20 by 72 foot home indicates that it is sufficient to meet this demand (Record, Ex. 18). The first-floor contains a 16 × 20 foot kitchen, a 27' 6" × 20 foot living room — comparable in size to the 17 × 29 foot living/dining room proposed in the petition, as amended before the Board, — and a bedroom 14 feet long by approximately 14' feet wide.[8] The bedroom has a full bath, and there is another half bath for guests. Thus, with the exception of laundry facilities, this design seemingly provides everything necessary for a retired couple to live.[9] The Applicants' own evidence, therefore, demonstrates that relief from the Ordinance's setback requirements is not necessary to eliminate the hardship resulting from the possible need to live on one floor. Even if this were a cognizable hardship, then, the substantial, reliable, and probative evidence of the whole record nonetheless demonstrates that it is not one faced by the Weirs if full conformance to the Ordinance's setback and lot coverage provisions is required.
James Weir testified that Applicants need a home with several bedrooms in order to accommodate guests, especially their children and grandchildren. However, ignoring the fact that the designed 20 × 72 foot home includes 3 guest bedrooms (and a large library), a property owner's inability to house a larger family than a conforming residence would allow does not rise beyond the level of mere inconvenience. DiDonato v. Zoning Boardof Review of the Town of Johnston, 104 R.I. 158, 164-65,242 A.2d 416, 420 (1968). Nor does the need to house guests.
Finally, Applicants allege sufficient hardship because of the irregular shape and length of a home conforming to the setback requirements. They contend that, due to its irregular shape, a conforming home would be inconsistent with surrounding homes, would detract from the aesthetic quality of the neighborhood, and would adversely affect the property values of neighboring parcels. Applicants also contend that such a home would beobjectively unreasonable as to both appearance and comfort/luxury.
Though ample evidence demonstrates that the proposed home was consistent with the neighborhood, this is only one of the burdens Applicants were required to bear. And, despite the allure of granting a variance where the suggested alternative would detract from the aesthetic quality of the neighborhood and adversely impact the value of neighboring property, absent a showing of the requisite hardship a variance is improper. Raposo v. Zoning Bd.of Review of the Town of Middletown, 104 R.I. 216, 243 A.2d 99
(1968). As one commentator has observed:
 "It is easy . . . to ignore these obvious points and to focus on the benefit the public would realize, or the detriment the public would avoid, from the granting of the variance. It is not enough that the public will realize a benefit, or avoid a detriment, if the variance is granted. While public benefit and detriment are relevant . . . when it is found that the owner's land is burdened, they are not, by themselves, sufficient to justify granting a variance. . . ." 3 Rathkopf, supra, § 58:18.
It is clear from the evidence presented to the Board that the alleged hardship is little more than the Applicants personal aversion to the aesthetics of a rectangular home. Geraldine Weir stated that though the "house that is allowed is 800 square feet more than we're asking for, it's not a very nice looking homeand we would like a traditional home . . . that fits in theneighborhood." (Tr. at 12 (Dec. 17, 2002) (emphasis added)). And, when asked why she was requesting a variance, she admitted,
 "I really don't want to live in the 20 foot wide house that really looks out of place on the lot. But I would like enough room to have a dining room and a sitting area in front of the house and not have to squeeze one long hall with rooms lined up along the side." Id. at 14.
Similarly, Architect Weir stated: "Could somebody live in it? Yes . . . but I think a house that's only 17 by 31 for both living room and dining room is not excessive by any suburban standards." (Tr. at 22 (Apr. 22, 2003)). Further, he admitted that the 20' × 72' home was "a reasonably sized house," but urged that "whether that's appropriate for the neighborhood, is really why we're here." Id. at 32. Again, however, benefit or detriment to the neighborhood is not evidence of hardship to the Applicant.
The Weir's personal aversion to living in a home in which the rooms are strung out along a single corridor does not amount to the hardship required for a dimensional variance, especially where the testimony offered by Mrs. Weir and architect Weir is that such a home would be livable. An applicant must show "more than that the varying of the proscribed regulation is for him a preferable alternative to compliance therewith, where compliance might be had, albeit with some inconvenience." H.J. BernardRealty Co., Inc., supra. Similarly, the Weirs' aversion to living in a home of smaller size and of a shape dissimilar to the neighbors is not a sufficient hardship. The Weirs' desire for a home with a different layout than one which would conform to the Ordinance's setback and lot coverage requirements is a difficulty no greater than that faced by the owner of a café too small to meet his business goals and does not meet the requisite burden.See Gartsu v. Zoning Board of Review, 104 R.I. 719, 720-21,248 A.2d 597, 598 (1968).
Applicants contend, however, that the hardship that they complain of is rooted in the objective unreasonableness of, and not merely their personal disdain for, a conforming home. Applicants rely on two cases to support their contention that an applicant will suffer a hardship greater than a mere inconvenience where a home that conforms to existing zoning regulation would be "objectively unreasonable." In Travers,supra., the applicant desired to replace an existing, dilapidated 17 × 18 foot wooden garage. In that case, however, the Court found that the existing structure was "not suitable for modern automobiles," 101 R.I. at 514, 225 A.2d at 224, and, expressly noting that a "garage was a permitted accessory use" in the district, id. at 512, 225 A.2d at 223, concluded that to deny the applicant a fuller use of his property and at the same time serve no public interest would be arbitrary and an abuse of discretion. In so concluding, the Court further observed that "the existing lot-line limitations will not be affected by the relief granted." Id. at 525, 225 A.2d at 224.[10] InGardiner v. Zoning Bd. of Review of the City of Warwick,101 R.I. 681, 226 A.2d 698 (1967), the Court upheld the grant of a variance to construct a 2½ room home measuring 24 × 28 feet, noting only that "as a practical matter it is not possible for [petitioner] to comply with the side line and side street requirements on the lot in question." Id. at 690, 226 A.2d at 703.
Though neither of these opinions uses the language "objectively unreasonable," they do exemplify the principal stated inTravers that the mere inconvenience test "must be applied reasonably and realistically." Travers, 101 R.I. at 514, 225 A.2d at 224. Nonetheless, Applicants here presented no evidence probative on the issue of whether a conforming home was objectively unreasonable — whether or not taking into account the surrounding properties. Though Architect Weir opined that a smaller home would be impractical, (Tr. at 33 (Dec. 17, 2002), and real estate Expert Hogan testified that a conforming home, "unknown to the standards of Middletown," (Tr. at 60 (April 22, 2003)), and would be a "a nice bowling alley," id. at 61, actual proof of objective unreasonableness would require more than these experts' bare statements of opinion. Evidence as to the unmarketability of the home, for example, would be required to support the opinion. See Ferland Corp. v. Bouchard,626 A.2d 210, 214 (R.I. 1996). Otherwise, it is impossible for this court is "to ascertain whether the conclusion drawn from [the facts underlying the opinion] possesses sufficient probative force, or is not mere conjecture or speculation." Gorham v.Public Building Authority of Providence, 612 A.2d 708, 717 (R.I. 1992).[11] Applicants, however, presented no evidence that a home conforming to the Ordinance's setback and lot coverage requirements would be unmarketable. See, e.g., WestminsterCorp. v. Zoning Bd. of Review of the City of Prov.,103 R.I. 381, 388, 238 A.2d 353, 358 (R.I. 1968) (upholding grant of variance where necessary for "any assurance of financial success," and for an "economically sound building project"). Nor did they present any objective evidence that a smaller home would be dangerous to occupy or, at the least, an unreasonably uncomfortable home.[12]
For the foregoing reasons, the Decision of the Town of Middletown Zoning Board must be reversed as clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, affected by error of law, in violation of statutory and ordinance provisions, and characterized by an abuse of discretion.
II. The Board's Conclusion that Applicants' Proposal Requested the Least Relief Necessary Was Clearly Erroneous in View of the Reliable, Probative, and Substantial Evidence of the Whole Record, Was Affected by Error of Law, Was in Violation of Statutory and Ordinance Provisions, and Was Characterized by an Abuse of Discretion
The Board, having determined that the requisite hardship was met, albeit erroneously, was nonetheless obligated to determine that the proposed design incorporated only the least relief necessary. Given the Legislature's mandate that any variance provide the least relief necessary, G.L. § 45-24-41(c)(4), applicant was required to provide evidence that a more conforming, objectively reasonable home could not be built. They failed to do so.
The only objective, reliable, and probative evidence presented by Applicants in their attempt to carry this burden was the testimony of real estate expert Hogan. Hogan testified that "[i]n that neighborhood, with the standard of 36 feet, a 32-foot house of that design and a two-story house is the minimum, appropriate size for that house . . . within the confines of what's best for the neighborhoods, the application before you is appropriate." (Tr. at 44 (Apr. 22, 2003)). This testimony sheds light only on what type and size home is consistent with the neighborhood. It is axiomatic, however, that the least relief necessary is that which ameliorates the hardship justifying the variance. Cf.Lincoln Plastic Prods., 104 R.I. at 115, 242 A.2d at 303 (zoning boards "authority to act favorably is limited to the extent of relief demonstrated to be reasonably necessary to the enjoyment of the permitted use sought to be served"); 3 Rathkopf,supra, § 58:1 ("[t]he variance is a means of correcting the occasional inequities that are created by general zoning ordinances"). And, Applicants have not pointed to any authority suggesting that a landowner is entitled to a variance to build a home similar to neighboring homes, no matter how livable, comfortable, or marketable a more conforming home might be.
Further, to the extent that architect Weir's full testimony can be interpreted as a conclusion as to architectural soundness, it is clear that the testimony was not reliable, inasmuch as the petition was subsequently amended to reduce the width of the proposed design, presumably upon conferring with the home's architect. And no testimony was given as to the soundness of the design as amended. And to the extent the architect's and Hogan's testimonies were based upon their opinions of the minimal, objectively reasonably-sized home — without regard to surrounding properties — they are neither probative nor reliable testimony. This is especially true because neither provided a factual basis for his conclusion. See Ferland Corp. v. Bouchard, 626 A.2d at 214 (citing Burrillville Racing Ass'n v. Tellier, 574 A.2d 749, 752 (R.I. 1990) ("[i]f [an] expert fails specifically to set forth the factual basis for his conclusion, the [Board] must disregard his testimony"); Morgan v. Washington Trust Co.,105 R.I. 13, 17, 249 A.2d 48, 51 (1969) ("all matters of [non-expert] opinion are excluded from evidence as being unreliable").
Because Applicants offered no reliable evidence that the petition did, in fact, request the least relief necessary, the Board's Decision is without any support whatsoever. Conversely, Appellant presented the testimony of a Bob Reed, of Reed Development Corporation. Mr. Reed testified to being in the business of designing and constructing homes. (Tr. at 94-95 (Apr. 22, 2003)). He stated that "this [design] can be reduced to a 28-foot-wide box on the main living area. . . ." Id. at 96-97. And that this smaller home would be "fully functional." Id.
Because neither expert presented evidence as to a home smaller than 28 feet in width, Applicants failed to meet their burden. Therefore, the Board's approval of Applicant's variance requests must be reversed as clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, affected by error of law, and arbitrary and capricious. G.L. §45-24-69(d).
 Conclusion
For the foregoing reasons, the Board's decision must be reversed as clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record, affected by error of law, and as arbitrary and capricious and characterized by an abuse of discretion. G.L. § 45-24-69(d).
[1] All references to exhibits are as numbered by the zoning officer in the certified record, and not as marked by the Zoning Board of Review.
[2] Despite, Geraldine Weir's assertion that this plan has already been approved, Transcript at 11-12, this Court notes that substandard lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception. R.J.E.P. Assocs. v. Hallewell, 560 A.2d 353, 355 (R.I. 1989); Sun Oil Co. v. Zoning Board of Review of the Cityof Warwick, 105 R.I. 231; 251 A.2d 167 (1969); Gardiner v.Zoning Board of Review of the City of Warwick, 101 R.I. 681;226 A.2d 698 (1967).
[3] Appellant's home is located three feet from the lot line, (Record, Ex. 25, Decision of Zoning Bd. (June 24, 1987), granting variance to Appellant to construct addition to home), whereas the Balducci property is 15 feet from the lot line. (Tr. at 35, Testimony of John West, (Apr. 22, 2003)).
[4] The proposed home was actually designed with a bedroom (with full bath) on the first floor, making it a four-bedroom home. However, the testimony before the Board was that the room would be used as a library unless and until it became necessary for the Weirs to live on one floor because of old age. (Testimony of James Weir, Architect Tr. at 14, 15, (April 22, 2003)). Because the Weirs intended the residence to be a retirement home that would accommodate them in their old age, they preferred to include a possible bedroom on the first floor.
[5] The Board's statutory authority to impose development conditions is derived from R.I.G.L. 1956 § 45-24-43.
[6] "Under the Viti rule . . . a landowner, precluded from the full enjoyment of the use of his property for permitted purposes by an insistence upon a literal enforcement of area restrictions, is entitled to relief upon a showing that the adverse effect of such enforcement will amount to something more than a mere inconvenience." Sun Oil Co. v. Zoning Bd. of Reviewof the City of Warwick, 105 R.I. 231, 233, 251 A.2d 167, 169 (R.I. 1969).
[7] Under the Viti rubric, "the question is whether . . .full compliance with the setback provisions of the ordinance would constitute more than a mere inconvenience adversely affecting full enjoyment of the permitted use." WestminsterCorp. v. Zoning Bd. of Review of the City of Prov.,103 R.I. 381, 388, 238 A.2d 353, 357 (R.I. 1968). If so, the applicant is entitled to a variance, the extent of which is determined by necessity.
[8] The plan does not indicate the width of the room, but it appears to be approximately 14". Similarly, the exact widths of the living room and kitchen are not indicated, but they encompass the entire width of the interior of the home.
[9] Applicants offered no evidence that this was the only feasible design. Rather, James Weir testified that the purpose was merely to demonstrate what could be built as a matter of right. (Tr. at 47 (Dec. 17, 2002)). Thus, it is plausible that laundry facilities could be easily added into the design.
[10] Though Applicants proposal does include variances from the lot line requirements, unlike the garage in Travers, it is interesting to note that this is not true as to Plaintiffs lot.
[11] Where a conforming home is so inconsistent with neighboring properties that it would be unmarketable, or could only be built at a loss, a variance ought to be granted so long as a zoning board is satisfied that all of the other prerequisites of G.L. § 45-24-41 have been met. Thus, the Legislature has not mandated that nonconforming land or structures shall not be considered in granting a dimensional variance. See G.L. § 45-24-41(d).
[12] Given the size of and amenities included the proposed home, it is doubtful that Applicants could not present evidence that a smaller home, like that in Gardiner, for example, would be objectively reasonable.