DECISION
Linda Olczak ("Olczak"), appellant, challenges the City of Warwick Zoning Board of Review's decision, sitting as the Planning Board of Review, upholding the Planning Boards decision conditionally granting Defendants Mary Ann Steven's and James Feeney's application for a subdivision. Furthermore, Olczak challenges the City of Warwick's Zoning Board of Review's decision granting Steven's and Feeney's application for a dimensional variance for the construction of a house on an undersized lot. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69 and § 45-23-71.
 FACTS AND TRAVEL
In December of 1985 Stevens was the record owner of Assessor's Plat 359 Lots 23, 27, and 29. Individually, Lot 23 comprises 6400 square feet and Lots 27 and 29 are each 3200 square feet. All three of these lots are located in an A-7 Zone, which requires a minimum lot area of 7000 square feet to construct a single-family residence. (Ordinance Table 2A). The other two lots remain vacant and undeveloped.
On December 19, 1985 Stevens sold Lot 23 to Olczak, while retaining Lots 27 and 29. In March of 2002, Stevens entered into a purchase and sales agreement with James Feeney and Desiree Perry for the purchase of Lots 27 and 29. The sale was contingent upon approval for construction of a single-family home on an undersized lot. In order to get this approval, Stevens, Feeney and Perry applied to the Planning Board for a major subdivision/major land development plan.
On May 1, 2002, the City of Warwick's Planning Board heard arguments on this subdivision. The Board, through a written decision, conditionally recommended approval of the major subdivision, provided that the applicant receive "Zoning Board relief for less than the required lot area. . . ." (Planning Board Decision, May 13, 2002). In making their decision the Planning Board considered the subject property to be Assessors Plat 359, Lots 23, 27 and 29.[1] Specifically, the Planning Board found that the major subdivision:
 1. Generally consistent with the Comprehensive Community Plan.
 2. Not in compliance with the standards and provisions of the City's Zoning Ordinance therefore, requiring Zoning Board relief for less than the required lot area.
 3. That the creation of the lots will result in no significant environmental impact as shown on the final plan, and
 4. That the proposed subdivision possesses adequate and permanent access to a public street.
As part of this decision the Board also considered the fact that they were legalizing Lot 23, which would have been part of the illegal subdivision.
Olczak appealed the Planning Board's decision to the Zoning Board of Review, sitting as the Planning Board of Appeals. The Zoning Board heard arguments from the Olczak and Stevens concerning the Planning Board's decision. Olczak argued that the Board lacked jurisdiction to consider Lot 23, because it was not part of the application. Furthermore, she argued that the Planning Board improperly recommended the subdivision, because the non-conformance to the zoning ordinance was a direct result of Stevens's illegal subdivision. The Zoning Board listened to argument and upheld the decision of the Planning Board.
While the appeal of the Planning Board's decision was pending, Stevens and Feeney applied to the Zoning Board for a dimensional variance to build on an undersized lot. Olczak appeared before the Zoning Board and objected to the application. The Zoning Board reviewed the evidence before it and noted that the property in question consisted of 6400 square feet and was zoned A-7, which required a minimum area requirement of 7000 square feet in order to build a single family residence. The Board also noted that the applicant desired to build a 26' x 42' single-family dwelling on the property. In ruling on the variance, the Zoning Board relied on the fact that applicant had received preliminary approval from the Planning Board for the subdivision and that the only relief sought was for a 600 foot area variance. The Board thus held that:
 1. The hardship form which the petitioner seeks relief is due to the unique characteristics of the surrounding area and not due to a physical or economic disability of the applicant. The subject property was originally platted many years ago.
 2. Said hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain. The petitioner is trying to realize a beneficial use of the subject property. The only legally permitted use for the property is a single-family dwelling.
 3. The granting of the requested variance will not alter the general characteristics of the surrounding area or impair the intent or purpose of this zoning ordinance or the comprehensive plan of the City. The proposed dwelling and the size of the subject property would be in keeping with the surrounding properties.
 4. The relief requested was the least relief necessary. The granting of the request would legalize the subdivision that has already occurred. The relief for 600 square feet is the least relief as all setbacks will be met for the dwelling.
Olczak now appeals both decisions. Olczak asks this Court to find that the Zoning Board of Review, sitting as the Planning Board of Appeal, erred because it lacked jurisdiction to hear the application for subdivision, improper notice was given and that the Board's decision is devoid of findings of fact. Furthermore, Olczak asks this Court to find that the Zoning Board of Review erred when it granted the petitioner's application for a variance because the petitioner had created the hardship from which relief was sought.
 STANDARD OF REVIEW
The review of a zoning board of review's decision is controlled by G.L. 1956 § 45-24-69(d), which provides that the Superior Court:
 "shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." G.L. § 45-24-69(d).
When reviewing the decision of a zoning board of review, this Court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings." Salve Regina Collegev. Zoning Bd. Of Rev., 594 A.2d 878, 880 (R.I. 1991) (citing DeStefanov. Zoning Bd. Of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means in amount more than a scintilla but less than preponderance." Caswell v. George Sherman Sand and Gravel Co.,Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi,120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). "Moreover, `the reviewing court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'" Mendosa v.Corey, 495 A.2d 257, 260 (R.I. 1985) (quoting Apostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). "The Court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced . . ." Lischio v. Zoning Board ofthe Town of North Kingstown, 818 A.2d 685, 690 (R.I. 2003).
Superior Court review of a Planning Board of appeals decision under § 45-23-71 has the same standard as above.
 ZONING BOARDS DECISION GRANTING A DIMENSIONAL VARIANCE
Rhode Island General Laws G.L. § 45-24-41(c) provides the requirements for obtaining a dimensional variance. The law states
 (c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings:
 (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in section 45-24-30(16);
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary. § 45-24-41(c).
At the time of the hearing, "to obtain a dimensional variance, the applicant was required to prove `that the hardship suffered by the owner of the subject property is the dimensional variance if not granted amounts to more than a mere inconvenience, which means that there is noother reasonable alternative to enjoy a legally permitted beneficial useof ones property.'" Sciacca, 769 A.2d at 583 (citing G.L. §45-24-41(d)(2) (emphasis 6 added)). Under this standard an applicant seeking a dimensional variance bears the burden of proving that "no reasonable alternative" exists. See Von Bernuth v. Zoning Board of Reviewof the Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). However, on June 28, 2002 the General Assembly repealed the portion of §45-24-41(d), requiring the applicant to prove "that no other reasonable alternative to enjoy a legally permitted beneficial use of one's property" exists. This change reinstated the "Viti Standard", which states that "an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience." Lischio v. ZoningBoard of the Town of North Kingstown, 818 A.2d 685, 692 (R.I. 2003). The Rhode Island Supreme Court, examining the change in this law, has stated that "the statute in effect at the time an appeal is decided is the controlling law." Id. (citing O'Reilly v. Town of Glocester, 621 A.2d 697, 704-05 (R.I. 1993)).
While the standard in place at the time of the Zoning Board's decision has changed, this Court notes that the stricter Sciacca standard was replaced with the more lenient Viti standard. However, Olczak does not argue that the Zoning Board applied the wrong standard, but rather that the variance should have been denied because the applicant created the hardship from which relied is requested.
Olczak points to § 45-24-41(c)(2), which provides that an applicant cannot receive a variance for a hardship that is self-created. Olczak argues that when Stevens owned all three lots in 1985 those properties had merged under the City of Warwick's Zoning Ordinance. When Stevens then subdivided these lots in December of 1985, she created two undersized lots. Because of this illegal subdivision, Olczak claims that Stevens is now prevented from obtaining a variance to allow for construction of a single family home on the undersized lot.
Interpreting § 45-24-41(c)(2), the Rhode Island Supreme Court has held the `"a variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant. . . . An area variance may not be granted to solve the problem of an applicant . . . who proposed to divide [her] property into to substandard parcels.'" Sciacca v. Caruso, 769 A.2d 578, 583 (R.I. 2001) (quoting Rozes v. Smith, 120 R.I. 515, 521, 388 A.2d 816, 820 (1978)). "This language instructs zoning boards and reviewing courts that the grant of a requested zoning variance is improper when, among other reasons, the alleged hardship results from `any prior action of the applicant.'" Id at 584 (quotation omitted). In Sciacca, the Rhode Island Supreme Court held that the applicants "prior action caused the planning board to subdivide her single-nonconforming lot into two substandard-sized parcels, thereby creating the undersized lot in question. This `prior action' resulted in the self-created hardship that she later used as the basis for her variance." Id. The Supreme Court thus held that the applicant should have been denied the dimensional variance.
In the instant case, Olczak's argument that Stevens created the hardship relies on a finding that the properties had merged under the City of Warwick's Zoning Ordinance while Stevens held the property. Olczak points to the current merger provision, which is found in § 405.2 of Warwick's Zoning Ordinance. Stevens argues that this ordinance was not in place when the properties were subdivided. As such this Court must apply the ordinance in place at that time. Stevens claims that under the merger ordinance in place in 1985 the properties had not merged.
In 1985, the merger ordinance in place stated:
 If two or more adjacent nonconforming lots fronting on the same street come into the same ownership on any date subsequent to the adoption of this ordinance and such combination of nonconforming lots, or a portion thereof, constitutes a lot of minimum size as defined in Section 5 of this ordinance, such combination or portion shall be considered as conforming to the requirements of this ordinance; and no structure may be constructed thereon unless it meets the requirements hereto. Warwick Code — Appendix A — Zoning § 3.4.2. (ord. No. 0-83-12 § 1, 8-9-83).
Steven's argues that all three lots would not have merged under this ordinance. She claims that only two of the lots would have merged creating a lot of 9600 square feet and left the other lot of 3200 square feet as a separate lot. Furthermore, Stevens argues that none of the lots merged because of the Supreme Court's decision in Redman v. Zoning andPlatting Board of Review of the Town of Narragansett, 491 A.2d 998 (R.I. 1985), which was the controlling law at the time of the subdivision in 1985. She argues that Redman stands for the proposition that where a developed lot exists prior to the passage of a more restrictive zoning ordinance, and the house is a legal non-conforming use, that the developed property does not merge with the other property. Therefore, she argues that the lots did not merge because this was the law at the time Stevens subdivided the property.
This Court does not agree with Steven's argument. While the Court agrees that Ordinance § 3.4.2, applies in the instant case, the Court finds that the properties had merged and that Redman does not apply. The Court notes that even if all three properties did not merge under the applicable merger ordinance, two of the properties would have. Therefore, regardless of whether one lot, of 12800 square feet, was formed or two lots, one comprising 9600 and the other consisting of 3200 square feet, the fact still remains that there was an illegal subdivision in 1985 when the properties were spilt.
The instant case is distinguishable from the Rhode Island Supreme Court's decision in Redman. Since its decision, the Supreme Court has interpreted Redman as holding that the petitioner was entitled to a variance because the lot "contained a pre-existing use and had become a separately owned, substandard lot, no longer contiguous to other lots in the same ownership." Brum v. Conley, 572 A.2d 1332, 1335 (R.I. 1990). Furthermore, the Supreme Court held "in Redman that the vacant contiguous lots should be merged and a building permit for the lots should be granted." Id. The Supreme Court has also stated that "Redman did not stand for the principle that a variance could be granted to a petitioner to build on an undersized lot." Considine Leasing Co. v. Zoning Bd. ofReview, 573 A.2d 278, 279 (1990). This Court also notes that in Redman, the Court merged four of the five lots to create two lots which conformed to the zoning ordinance.
In this case, Steven's was the owner of the three substandard lots when the merger provision was enacted. `"[T]he question of whether an applicant is entitled to a variance because of hardship flowing from a literal application of the terms of the ordinance is in no way dependant on his knowledge or lack of knowledge of the existence of zoning restrictions affecting the land.'" Brum, 572 A.2d at 1336 (quotingGardiner v. Zoning Board of Review of Warwick, 101 R.I. 681, 691,226 A.2d 698, 704 (1967)). Because these three lots were contiguous substandard lots they merged to create a single conforming lot. When Stevens then sold part of the merged lots, she illegally subdivided the property creating two substandard lots. Stevens now seeks a variance to correct this illegal subdivision. This Court finds that a variance was inappropriate in this case, because Stevens created the hardship from which she now seeks relief. See Sciacca, 769 A.2d at 584. For this reason the Court reverses the decision of the Zoning Board of Review and holds that the petition for a variance should have been denied.
 PLANNING BOARD'S DECISION CONDITIONALLY GRANTING PETITIONERS SUBDIVISION
The Planning Board's approval of the subdivision was contingent on approval of a dimensional variance by the Zoning Board. Because this Court holds that they created their hardship, it is not necessary for this Court to rule on the Planning Board's decision.
 CONCLUSION
After review of the entire record, including exhibits, transcripts and memoranda, this Court finds that the Zoning Board of Review erred when it granted the Defendant's application for a dimensional variance. For the reasons stated above, the Court reverses the decision of the Zoning Board of Review and holds that the petition for a variance should have been denied.
Counsel shall submit the appropriate judgment for entry by the Court after notice.
[1] The application before the Planning Board was only for Lots 27 and 29. See Return of Zoning Board of Review. Exhibit A — Copy of Application.