[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
Before this court is an appeal from the decision of the Barrington Zoning Board of Review denying petitioners' application for a special exception. Jurisdiction is pursuant to R.I.G.L. 1956 (1988 Reenactment) § 45-24-20.
TRAVEL and FACTS
Teresa and Michael G. Sarli, the petitioners in the instant case, are the owners of four adjacent, substandard lots numbered 65, 66, 67 and 68, Assessor's Plat #10, located on Beach Road in the Town of Barrington, County of Bristol. Contiguous to lot #65, is lot #70, a substandard sized parcel of land consisting of a small house which is owned by a family member of the former titleholder to lots 65 through 68. Prior to the petitioners' acquisition of lots 65 through 68, lots 65, 66, 67, 68 and 70 were in common ownership. As such, by operation of law under Title VI, Chapter 11, Article 9-1 and 9-3 of the Barrington Zoning Ordinances, these five lots must, and therefore are merged as one single lot. The purpose of the above zoning ordinances was to create lots the square footage of which equaled or exceeded 10,000 sq. ft. in order to reduce the density of the populated area in an R-10 district.
The pertinent zoning ordinance provisions read as follows:
 9-1 Substandard Original Lots
 A substandard original lot having frontage on a street may be used for any purpose permitted in its zoning district if such lot was shown on a recorded deed or plat entered into the records of land evidence in the office of the Town Clerk on the effective date of this ordinance or any prior ordinance or amendment rendering it substandard; provided, however, where such substandard original lot has one or more common boundaries with another lot owned by the same owner or his or its affiliate as defined herein, such lots shall be combined in accordance with the provisions of Subsection 9-2. For the purposes of this Section 9, an "affiliate" means, with respect to a specific owner: (1) such owner's parents (blood or adoptive), spouse, children or grandchildren (blood or adoptive) or any blood relative residing with such owner; (2) a trustee of a trust for the benefit of such owner or of any person identified in the immediately preceding clause; or (3) a corporation, partnership, firm, business or entity of which the majority of the voting interest is owned by such owner or any person identified in clause (1) and (2) above; or (4) a person who is an officer, director, stockholder (15% or more), trustee, employee, or partner of any entity or person referred to in clauses (1), (2) and (3) above.
 9-3 Combining lots in the Same Ownership
 Where land adjacent to a substandard original lot is owned by the owner of said substandard original lot or his or its affiliate, the exemption of Subsection 9-1 shall not apply and said substandard original lot shall be combined with said adjacent land to establish a lot or parcel having at least the required minimum dimensions and area set forth in Section 8 for the applicable zone. If all such adjacent land so combined is not sufficient to permit the enlargement of said lot to conforming area and dimensions, then the largest lot or parcel which the adjoining common ownership will permit shall be established. By way of example, if all such adjacent land so combined is sufficient to meet the applicable area and dimensional requirements for at least one lot but not for two or more fully conforming lots, then all such lots shall be combined to create a single lot only.
The merger provision in the instant case has a valid purpose. It will, for example, operate to decrease congestion in the streets and to prevent the overcrowding of land by limiting the number of new dwellings built in the residential districts. Brum v.Conley, 572 A.2d 1332, 1334 (R.I. 1990). Consequently, the burden is on the applicant to prove entitlement to an exception.Dean v. Zoning Board of Review of City of Warwick,120 R.I. 825, 390, A.2d 382, 386 (1978).
In the instant case, petitioners wish to create two lots so they can construct a home utilizing lots 65, 66, 67 and 68 and to establish lot 70 with a dwelling thereon, as a substandard lot as a legal nonconforming use. According to the petitioners' plan, lot 70 will remain an independent entity under separate ownership. However, lot 70 is a substandard lot only 4,646 sq. ft. in size as opposed to the 10,000 sq. ft. necessary in an R-10 district. Consequently, petitioners' proposal is also contrary to Article 9-4.
 9-4 Creation of Substandard Lots
 No lot or parcel of land proposed for a use shall be divided in such a manner as to create a new lot with less than the required lot area, frontage or width.
Petitioners were therefore precluded from using lots 65, 66, 67 and 68 for their purposes and separating lot 70 without first obtaining a special exception from the Zoning Board of Review pursuant to Article 9-7.
On August 15 and September 19, 1991, the petitioners applied to the Board for the above. At advertised hearings petitioners presented witnesses, expert testimony and exhibits. No property owner objections were voiced. In a decision dated September 20, 1991, the petitioners' application was denied in a 3-2 affirmative vote, 4 affirmative votes were needed for approval. From the above denial, the instant appeal was filed on October 1, 1991.
APPELLATE REVIEW
Jurisdiction for this court to hear an appeal from a decision of a zoning board of review is pursuant to R.I.G.L. § 45-24-20(a) which reads:
 45-24-20. Appeals to superior court. [Repealed effective July 1, 1993.] — (a) Any person or persons jointly or severally aggrieved by a decision of the zoning board may appeal to the superior court for the county in which the municipality is situated by filing a complaint setting forth the reasons for the appeal within twenty (20) days after a decision has been filed in the office of the zoning board. The zoning board shall file the original documents acted upon by it and constituting the record of the case appealed from, or certified copies thereof, together with other facts as may be pertinent, with the clerk of the court within ten (10) days after being served with a copy of the complaint. When the complaint is filed by someone other than the original applicant or appellant, the original applicant or appellant and the members of the zoning board shall be made parties to the proceedings. The appeal shall not stay proceedings upon the decision appealed from, but the court may, in its discretion, grant a stay on appropriate terms and make such other orders as it deems necessary for an equitable disposition of the appeal.
 However, the scope of this court's review is not unlimited.
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
Under the statute governing the Superior Court's review of a zoning board decision, as amended, the reviewing court may not substitute its judgment for that of the zoning board when "substantial" evidence on the whole record supports the board's findings. Apostolou v. Genovesi, 120 R.I. 501, 388 A.2d 821, 821 (1978). Substantial evidence has been defined innumerable times as more than a scintilla but less than a preponderance.Id. at 824. The Superior Court must examine the decision of the zoning board to ascertain whether the substantive rights of the petitioners have been prejudiced because of findings and inferences which are clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. Id. The element of substantiality is further defined by the whole record requirement. Id. at 825. The court must scrutinize the record as a whole to determine whether the findings of the zoning board are based on the law and the evidence on the whole record. Id.
However, the court is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the board's decision was supported by substantial evidence in the whole record. Id. If there is substantial evidence to support the board's findings, the court must affirm the zoning board decision. Mendonsa v. Corey, 495 A.2d 257, 260 (R.I. 1985).
THE SPECIAL EXCEPTION
According to Article 9-7, the Zoning Board of Review may hear and grant a special exception to the requirements of the provisions of this Section 9 as provided in Subsection 4-4(B) and subject to the prerequisite contained therein. The standard for granting a special exception has been enunciated in Subsection 4-4(B) of the Barrington Code which allows for the above where:
 (1) The public convenience and welfare will be substantially served
 (2) It will be in harmony with the general purpose
 (3) It will not result in or create conditions that will be inimical to the public health, safety, morals and general welfare of the community
 (4) That the granting will not substantially or permanently alter the appropriate use of the property in the surrounding area.
To obtain a special exception, pursuant to the ordinance, the petitioner must prove that neither the proposed use nor its location on the site would have a detrimental effect upon public health, safety, welfare and morals or in any other respect, violate the conditions set forth in Barrington Ordinance Subsection 4-4(B) of the Barrington Code. Gara Realty v. ZoningBoard of Review, 523 A.2d 855, 858 (R.I. 1987).
Special exceptions are intended to provide a landowner with relief from the burden of a use restriction that in peculiar circumstances may be shown to bear no reasonable relationship to the convenience, welfare and safety of the public. Brown v.Zoning Board of Rev. of Town of North Kingston, 99 R.I. 105,206 A.2d 96, 98 (1965). It is understood that a board should not lightly undertake to grant this relief by making the finding prerequisite to an exercise of its authority on the basis of speculation or conjecture. Id.
The zoning board cites the case of Brum v. Conley,572 A.2d 1332 (R.I. 1990), for support. This court, however, finds the zoning board's reliance on Brum as controlling in this case, to be misplaced. This court agrees with the petitioner that the instant situation is factually more similar to the facts ofRedman v. Zoning and Platting Board of Rev. of Town ofNarragansett, 491 A.2d 998 (R.I. 1985).
However, while similar, Redman is not controlling here either. In Redman, the parties were a married couple who owned five adjacent lots 122 through 126 which were in compliance with the zoning ordinance until 1974 when said ordinance was amended, making the lots substandard. Within the Redman case was also a provision requiring merger where such a situation resulted and ownership was in common. Id. To avoid having to merge their lots, in 1980 husband recorded title to 124 and 125 in his individual capacity and wife recorded title to 122, 123 and 126.Id. at 999. Consequently lot 126, which was already developed with a dwelling house thereon, became a separately owned lot no longer adjacent to other lots in same ownership. Id. Wife then applied for a variance for area and yard dimensions of lot 126 and husband requested a building permit for lots 122 and 123. Both were denied by the zoning board but the court overturned, allowing 126 to continue as a nonconforming use because lot 126 was not contiguous to others owned by the petitioner. In the instant case at the time of the filing of this petition there was no pre-existing legal, nonconforming use in lot 70 because lot 70 merged with lots 65, 66, 67 and 68 to form one lot.
The Barrington Zoning Board, in its brief, attempted to distinguish Redman from the instant case by citing the findings of the court in Brum. However, in Brum, the parties asked permission to build two separate dwellings on what would have become two undersized vacant lots. Brum v. Conley,572 A.2d 1332, 1333 (R.I. 1990). This court finds that neither Brum orRedman clearly apply to this case.
In the case at bar, the petitioner has contracted to purchase lots 65, 66, 67 and 68 from the owner of lot 70, who, prior to the purchase, owned all of the lots in question. All of these lots are contiguous.
When the Ordinance of the Barrington Code was enacted, all of these lots individually became substandard in size, they, pursuant to the Code, merged into one lot owned by the owner of lot 70.
Lot 70 is 4,646 square feet and has a dwelling house on it. If granted, the Petition would create two lots, lot 70 as a legal nonconforming use with dwelling thereon of 4,646 square feet and the lot of the petitioner consisting of lots 65, 66, 67 and 68, consisting of some 21,000 square feet.
If the petitioner can prove that the granting of this special exception will not violate the tenants of Subsection 4-4(B) of the Barrington Code, the petitioners are entitled to be granted the exception. Conversely, if the Zoning Board of the Town of Barrington finds, based on the evidence in the record that the granting of this petition would be in violation of the Code, the Board must deny the petition.
At the public hearing conducted on September 19th, petitioners presented the site plan of Richard Gibb, an architect, and a survey of the land and topographical map prepared by David Marrier's Surveying of East Providence. Said map included elevations which marked sixteen feet above sea level as their critical point for building, bringing to the Board's attention the conditions which the petitioner had to consider in designing his home. According to the record, as presented, said design did not appear to create conditions inimical to public health, safety, or welfare. The general purpose of the statute was to provide for lesser density in the area at issue. The petitioner has presented the Board with plans which call for the construction of a single home and garage. As such the above plans are in harmony with the general purpose and substantially serve public welfare.
After questions and evidence were presented, the board conducted its discussion. Their discussion, rather than substantiating denial, tends to support the granting of a special exception. Members of the board stated that not only would density remain unchanged, the primary purpose of the ordinance, but the good of the neighborhood would be preserved thereby not altering the appropriate use of the surrounding property. Mr. Packer stated:
 I might say in support of my own motion that probably the best use is being made of the property, that there is some merit in the applicant's argument that to leave Lot Number 65 completely free of any development would create maybe a problem further down the road that we can take care of on this decision tonight. There doesn't seem to be any inclination on the part of the owner of Lot Number 70 to further develop his property, and that we have an absence of any vociferous objections from abutters. As a matter of fact, the only abutter who appeared before us indicated although somewhat hesitantly that she's in favor of the development as proposed.
(Transcript, p. 16)
Ms. Thompson added:
 This is the best use of that particular property. This is a very unusual property; and therefore, by granting this we have to leave that 4,600 lot alone. But I certainly don't want it to be misread that this is something that we really like to do. It really, I would have much preferred it to have been joined with the other to make 9,000 or 10,000 but he couldn't have done what we wanted, and what was really best for the neighborhood had we made him do that. (Transcript, p. 17).
 As far as density goes, we're only going to have one house . . . In other words . . . by reconfiguring the lot line nothing is really going to change as far as how many houses are going to be on it.
(Transcript, p. 18).
Further, Mr. Santaniello added:
 By permitting the application tonight, we don't impact on density. We still end up with two units on those five parcels of land. So, now we get to the question, in my mind, what have we left, when we leave Lot 70 with 4,600 square feet which sounds like a very small amount of land when you talk in terms of 10,000 square feet and 25,000 square-feet lots in Barrington, et cetera. But if you go down there, and I went back to look because last month when we were going over this I was very concerned as are other Members of the Board that we were leaving a much smaller lot and making a much greater lot. I went back there and looked and that parcel that's there now, the development of it, the house that's on it is very comfortably situated visually in the neighborhood. I don't think there's any harm whatsoever to it, and if there were no application here tonight, it would be that way and no one would care. . . . density is not impacted upon . . . So, I think that this is one of those rare occasions when we can exercise the power that the ordinance gives us to grant an exception.
(Transcript, p. 21).
The above statements demonstrated that ample evidence supports the granting of a special exception by the Board. The statements made by Board members against the proposal were fewer and unsubstantiated, failing to explain why denial would best advance the purposes of the ordinance.
 Ms. Ashworth: . . . what the plans are and where they were placed and how basically it is not as important as to whether or not we are under the space, whether or not we have an opportunity here not to have a 4,600 square-foot lot; and it seems to me that our goal is to prevent this kind of thing from taking place. Even though it is a very unusual lot.
(Transcript, p. 17).
 Mr. Furtado: . . . You know, density argument is building a 3,500 square-foot house. That's pretty dense. So, anyway I'm opposed.
(Transcript, p. 17).
Further, when voting took place, three members favored the proposal while two opposed. Since four votes are required for passage, the petitioners proposal was defeated.
The dissenting Board members focused on the creation of a substandard lot 70 and the creation of a larger lot, 65, 66, 67, and 68. They were concerned about the density of the development of the site by the construction of a 3,000 square foot house and by the projected use of lot 65 which Board members felt should remain with lot 70 to create a lot of some 9,087 square feet and one larger lot of 16,305. sq. feet.
Petitioners' plans as presented indicated a needed use for lot 65 for elevation and floodplain considerations. The owner of lot 70 with dwelling thereon, pre-existed this petition and is willing upon proper approval to convey title to all but lot 70 to the petitioners. No objectors appeared to criticize or otherwise testify against the Petition.
The only two stated objections, therefore, stem from the two dissenting Board members' concerns over the creation of a substandard and legal nonconforming use, lot 70 with 4,646 square feet and an enhancement of the density of development by the construction of a 3,000 square foot dwelling and 21,000 square foot parcel.
Based on a review of the entire record the briefs submitted by the parties and the standard of review by which this Court must consider this matter, this Court finds as follows:
 That the location of lots 65, 66, 67 and 68 are unique and unusal in size and configuration and that these features lend itself to the granting of this Petition.
 That lot 70 at 4,646 sq. feet has existed with a dwelling house thereon for many years prior to the filing of this petition.
 That the granting of the petition by the Zoning Board would have insured that no more than one dwelling would have been built on the 21,000 sq. feet of lots 65, 66, 67 and 68 or upon the 4,646 sq. feet of lot 70.
 That there exists on the record a preponderance of the evidence that the proposed special exception if granted would not be inimical to the public health, welfare or safety of the citizens of Barrington.
 That the proposal "would not unduly conflict with the appropriate use of neighboring property" (Gardiner v. Zoning Board of Review of City of Warwick, 101 R.I. 728, 226 A.2d 698 at 702 (1967).
 That the proposed exception will be in harmony with the general purpose for which zoning ordinances are enacted.
 That the record is devoid of credible evidence to support a legal conclusion that the creation of a 3000 sq. ft. dwelling on a 21,000 sq. ft. parcel would be in violation of the density requirements of the zoning ordinances or contrary to its stated purpose.
 That the creation of a legal nonconforming use in lot 70 by the granting of this petition, while not generally desirable, would, considering the totality of the circumstances, not violate the general scheme or intention of the ordinances and would be in harmony with the general purpose from which these ordinances have been enacted.
 That the Board's denial of this petition was not supported by the evidence on the entire record and that conversely the petition on the evidence, is supported and its passage was warranted pursuant to Article 9-7 and Subsection 4-4(B) of the Barrington Ordinance.
This court, therefore, reverses the decision of the Barrington Zoning Board of Review and finds that the petitioners shall be granted a special exception pursuant to Article 9-7 of the Barrington Zoning Ordinance and that a building permit should issue to the petitioner in accordance with the petitioners' plans. An order may enter consistant with this decision.