[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Before this Court is the appeal of Bruce Brayman Builders, Inc. (Brayman), challenging the decision of the Zoning Board of Review of the Town of Hopkinton (Board), denying a dimensional variance for the construction of a residential dwelling. Brayman originally sought an area variance of 50,000 square feet, a frontage variance of 125 feet, and a side yard variance of six feet. Jurisdiction is pursuant to R.I.G.L. 1956 § 45-24-69.
 Facts and Travel
The subject property (Lot 31A), identified as Lot 31A on Hopkinton Tax Assessor's Plat 16, is situated in a Rural, Farming, Residential Zone (RFR-80) as defined by the Town of Hopkinton Zoning Ordinance (Hopkinton Zoning Ordinance). Lot 31A has an area of 30,000 square feet with 100 feet of frontage on Yawgoog Road. Lot 31A was created by deed on July 13, 1974, through carving out a portion of adjacent Lot 31.
Prior to the creation of Lot 31A, the Hopkinton Zoning Ordinance required building lots within areas zoned RFR-3 to contain an area of 60,000 square feet, road frontage of 200 feet, front yard setback of 60 feet, and side yard setback of 30 feet. As created, Lot 31A had only one-half of the required area and only one-half of the required road frontage as prescribed under the zoning ordinance. In 1992, the Hopkinton Town Council amended the zoning ordinance. Among the changes, the minimum dimensional requirement for this area (now zoned RFR-80) was increased to 80,000 square feet, frontage increased to 225 feet, front yard setback remained at 60 feet, and the side yard setback increased to 40 feet.
On May 6, 1998, Brayman signed a Purchase and Sales Agreement to buy Lot 31A. The agreement was conditioned on Brayman's ability to obtain a building permit to construct a residential dwelling. This provision, included at Brayman's request, allowed Brayman to withdraw from the Purchase and Sales Agreement without penalty, if he was unable to obtain a building permit. On August 6, 1998, Brayman closed on the lot without filing for or obtaining a building permit.
On May 9, 1999, Brayman applied to the Board for several dimensional variances: a 50,000 square foot area variance, a 125 foot frontage variance, and a six foot side yard variance. Brayman intended to construct a 26 by 34 foot one-family house.[1] After properly advertising the application and hearings, the Board took testimony and evidence over several hearings on the variance application. During the course of the hearings, Brayman "withdrew" his request for the six foot side yard variance. Brayman stated that he would purchase a strip of land from Lot 31, negating his need for the side yard relief. On December 6, 1999, the Board denied the variance application by a vote of 4 to 1. On January 21, 2000, the Board issued its written decision, in support of which the Board made findings of fact and conclusions of law. Specifically, the Board found that by failing to seek a building permit in the three months prior to buying the lot, Brayman caused its hardship from which it sought relief and that the hardship from which Brayman sought relief was due primarily from its desire to realize greater financial gain.
On appeal, this Court found that the Board failed to make findings that address all the provisions of G.L. § 45-24-41(c) and (d).[2] The Court held the Board failed to address subsections (c)(1), (3), and (4) of §45-24-41. The Court remanded the matter to the Board to make findings in accord with all the provisions of G.L. § 45-24-41(c) and (d).[3] On February 28, 2002, the Board convened and addressed the required provisions. After a review of the prior hearing and discussion on the matter, the Board made the following findings of fact:
 1. The Board found that the record did not satisfactorily support that the hardship from which the applicant sought relief was due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and was not due to a physical or economic disability of the applicant.
 2. That the record did not support, to the satisfaction of the Board, that the petitioner prove that the granting of the requested variance would not alter the general character of the surrounding area or impair the intended purpose of the Zoning Ordinance or the comprehensive plan upon which the Ordinance was based.
 3. The Board found that the relief requested by the applicant was the least relief necessary.
 4. The Board found that there was no evidence in the record of the proceeding to demonstrate that the hardship suffered by the owner of the subject property, if the dimensional variance was not granted, amounted to more than a mere inconvenience, which would mean that there was no other reasonable alternative to enjoy a legally permitted beneficial use of the property. Decision of the Hopkinton Zoning Board of Review, filed with this Court Sept. 29, 3003.
 Analysis
Rhode Island General Laws § 45-24-69(D) guides this Court in its review of the Board's decision:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
 Dimensional Variance
Substandard lots cannot be developed as individual nonconforming lots unless the landowner applies for a variance or an exception. R.J.E.P.Assocs. v. Hellewell, 560 A.2d 353, 355 (R.I. 1989). When seeking a dimensional variance, the applicant bears the burden of production and persuasion as to why such relief is warranted. DiIorio v. Zoning Bd. ofReview of East Providence, 105 R.I. 357, 362, 252 A.2d 350, 353 (1969). Consequently, when applying for a dimensional variance, the applicant is required to demonstrate to the zoning board:
 (c)(1) [t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant. . . .
 (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) That the relief to be granted is the least relief necessary.
 * * *
 (d)(2) in granting a dimensional variance, that the hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. G.L. § 45-24-41; see also Town of Hopkinton Zoning Ordinance § 9D.
An application for relief from the literal requirements of a zoning ordinance may be made by filing with the zoning enforcement officer or agency an application describing the request and supported by any data and evidence as may be required by the zoning board of review or by the terms of the ordinance. G.L. § 45-24-41; Town of Hopkinton Zoning Ordinance § 20(A)(4). The procedures and requirements for filing an application for a variance are contained within the Hopkinton Zoning Ordinance.[4] The Hopkinton Zoning Ordinance requires that when applying for a dimensional variance, the applicant must submit copies of a site plan prepared by, and signed and stamped by, a professional engineer or professional land surveyor, which shows, inter alia, existing and proposed structures, and their relationship and distances from lot boundary lines. Town of Hopkinton Zoning Ordinance, Appendix B.[5]
Additionally, upon the applicant's request, the Board, in appropriate circumstances, may waive the provision of any items of information listed above. Id.; Town of Hopkinton Zoning Ordinance § 9(A). The specific reasons for the request of waiver of checklist items must be described on the application. Id. The waiver(s) requested must be approved by the Board before an application without all the items listed above will be deemed complete. Id.
During the course of the hearings, Brayman stated that he was withdrawing the request for the side yard relief, as he was planning to purchase a strip of land from the adjoining property and thus would be in conformity with the side yard requirements. However, the plans submitted to the Zoning Board were for a 26 by 34 foot one-family house and specified the location of the house on the lot. Additionally, even though Brayman indicated he was withdrawing the request for the side yard variance, his plan remained to build the 26 by 34 foot house. Brayman never requested, and the Board never approved a waiver of the requirement of a site plan.[6] Hence, even if the Zoning Board had granted the area and frontage variances, the house would not have complied with the town ordinance regarding side yard setbacks.
Additionally, as indicated above, Brayman stated he would purchase a six foot strip of property from the adjacent landowner. This purchase would have resulted in a change of the lot lines — an administrative subdivision[7] — and would have required approval of the Hopkinton Administrative Officer and/or the Planning Board. See Town of Hopkinton Land Development and Subdivision Regulations, Article V (C). As detailed in the Hopkinton Subdivision Regulations, an application for an administrative subdivision may eventually require approval of the Planning Board. Town of Hopkinton Land Development and Subdivision Regulations, Article V (C).[8] The Hopkinton Land Development and Subdivision Regulations state that where an applicant requires a variance and Planning Board approval, the applicant shall first obtain an advisory opinion and conditional approval from the Planning Board.[9]
Consequently, had the Board granted the requested relief it would have acted in excess of its statutory and ordinance powers.
Similarly, the Board must expressly address the requested relief. In this case, that relief shifted midstream, rendering it impossible for the Zoning Board to grant the remaining relief. See Gardiner v. Zoning Boardof Review of Warwick, 101 R.I. 681, 226 A.2d 698 (1967) ("zoning boards have no authority to go beyond the powers enumerated in the ordinance"). Consequently, the Board may have acted in excess of its statutory and ordinance powers if it had granted the requested relief — which is not permissible under the Hopkinton Ordinance. See Arc-Lan Co. v. Zoning Bd.of Review of the Town of North Providence, 261 A.2d 280, 282, 106 R.I. 474, 476 (1970) (". . . [A] zoning board of review may not, either directly or indirectly, act so as to, in effect, amend the provisions of a zoning ordinance[,] and it is without authority to nullify the pertinent provisions of the [zoning] ordinance.").
By filing the application, Brayman set in motion a costly and time consuming procedure. The hearing was duly advertised. Town officials prepared for the hearing and abutters were notified and invited to appear. Brayman was put on notice to properly prepare for the hearing and to anticipate opposition. During the course of the hearing, when Brayman ran into resistance from the Board regarding the six foot side yard variance, he chose to "withdraw" that request sua sponte. At that juncture, Brayman was faced with the choice to continue the hearing with the present application or withdraw the application and re-submit a new application accompanied by a site plan which complied with the side yard requirements, either by making the house smaller or by properly purchasing the required six feet from the adjacent property and obtaining the required approvals. Instead, Brayman chose to continue with his "modified" application rather than halt the proceedings. This is not proper. Notice is given and plans are filed in advance to apprise interested parties of the actual proposal, not a rough draft. Otherwise, an applicant could manipulate the system and turn hearings into mere dress rehearsals at the applicant's option. Any time the applicant became dissatisfied with the progression of the hearing, he could simply "withdraw" or modify the application and continue. Cf. Roger WilliamsCollege v. Gallison, 572 A.2d 61 (R.I. 1990) (authority of trial justice to remand case to zoning board for further proceedings should not be exercised to afford remonstrates another opportunity to present case when evidence initially presented is inadequate); Town of Hopkinton Zoning Ordinance § 21(B) (requiring a time period of one year before a successive similar application may be filed).
 Conclusion
Pursuant to G.L. 1956 § 45-24-69(d), this Court may remand a case to the Zoning Board of review for further proceedings. However, "the remand for further proceedings should be based upon a genuine defect in the proceedings in the first instance, which defect was not the fault of the parties seeking the remand, or upon the fact that no record of the proceedings upon which a reviewing court may act." Roger Williams Collegev. Gallagher, 572 A.2d at 63. In the present case, fault lies upon Brayman for its handling of the application procedure.
Additionally, reversal or modification of the Board's decision or a remand for further proceedings is not warranted under the provisions of G.L. § 45-24-69(D). That section unambiguously requires a finding by the court that the substantial rights of the party have been prejudiced in order to warrant a reversal, modification, or remand This Court is not convinced that substantial rights of Brayman have been prejudiced since Brayman could not have obtained the variance as previously discussed. As such, reversal, modification, or remand is not proper.
The decision of the Board denying the request for dimensional variances is affirmed. Counsel for the Board may prepare an appropriate order.
[1] Brayman's variance application stated that a "six-foot sideyard variance is necessary to construct the house, which is six feet too wide for the lot."
[2] Bruce Brayman Builders Inc. v. Zoning Bd. of Review of Hopkinton Thomas McQuade, 2001 R.I. Super. LEXIS 141 (J. Gagnon), November 26, 2001.
[3] On Dec. 17, 2001, this Court denied Brayman's motion for reconsideration.
[4] G.L. § 45-24-58 provides in pertinent part:
 The zoning ordinance establishes the various application procedures necessary for the filing of . . . requests for variances . . . with the zoning board of review, consistent with the provisions of this chapter. The zoning ordinance provides for the creation of appropriate forms, and for the submission and resubmission requirements, for each type of application required. A zoning ordinance may establish that a time period of a certain number of months is required to pass before a successive similar application may be filed.
[5] Hopkinton Zoning Ordinance Appendix B provides in pertinent part;
The application for a Dimensional Variance to the Zoning Board of Review must be accompanied with the following information:
 A. Three (3) copies of a site plan prepared by, and signed and stamped by, a professional engineer or professional land surveyor at a scale of no less than one (1) inch = forty (40) feet clearly showing: name address of property owner(s) date, north arrow, graphic scale, lot dimensions and area plat lot, zoning district(s) and setbacks
 * * *
 — existing and proposed structures, and their relationship distances from lot boundary lines
 * * *
See also Town of Hopkinton Zoning Ordinance § 9(A), which reads in pertinent part;
 Upon receipt of an application wherein the applicant seeks a waiver from the requirement of furnishing any item of data and/or evidence as required by the applicable appendix, the zoning enforcement officer shall immediately transmit said application and waiver request to the zoning board, which shall hear and decide the waiver request at a regularly scheduled or special meeting of the zoning board. In the event the zoning board grants such a waiver request, the application, being otherwise in conformity with the applicable appendix, shall be deemed complete. In the event the zoning board does not grant the waiver request in full, the application shall not be deemed complete until all data and/or evidence required by the applicable appendix for which a waiver has not been granted, is filed in the office of the zoning enforcement officer.
[6] This court notes, without deciding, that in this situation the Board may not have been able to waive this requirement. "In granting an application for a variance . . . a board of review of necessity incorporates the application for relief and any accompanying plot plan in its decision. This means that the relief requested is limited to the facts revealed by the application and plot plan. Thus, in case of authorization to construct a dwelling on an undersized lot, the house must be erected in the exact location indicated on the plan." Roland F. Chase, Rhode Island Zoning Handbook, § 111 (1993).
[7] Article V (c)(2) of the Hopkinton Land Development and Subdivision Regulations defines an administrative subdivision as;
 "Re-subdivision of existing lots that yields no additional lots for development, and involves no creation or extension of streets. Such re-subdivision shall only involve divisions, mergers, mergers and division or adjustments of boundaries of existing lots."
[8] Article V (c)(2) of the Hopkinton Land Development and Subdivision Regulations provides in pertinent part:
 c. Within fifteen (15) days of certification of completeness the Administrative Officer shall review the application and approve, deny, or refer it to the Planning Board with recommendations. The Officer shall report its actions to the Planning Board at its next regular meeting, to be made part of the record. d. If referred to the Planning Board, the board shall consider the application and the Recommendations of the Administrative Officer and, shall either approve, approve with conditions, or deny the application within sixty-five (65) days of the certification of completeness. Failure of the Planning Board to act within the period prescribed shall constitute approval of the administrative subdivision plan and a certificate of the Administrative Officer as to the failure of the Planning Board to act within the required time and the resulting approval shall be issued on request of the applicant.
[9] "Where an applicant requires both a variance from the Zoning Ordinance and Planning Board approval, the applicant shall first obtain an advisory recommendation form the Planning Board, as well as conditional Planning Board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional Zoning Board relief, and then return to the Planning Board for subsequent required approval(s)." Town of Hopkinton Land Development and Subdivision Regulations, Article V (D)(1)(a).