DECISION
Before this Court is an appeal from a decision ("Decision") of the Zoning Board of Review of the City of Newport ("Board or "Zoning Board"), which denied Dorothy Kostek ("Kostek") and Shannon Dunnigan ("Dunnigan") (collectively, "Appellants") a dimensional variance and/or special use permit for parking relief in connection with the alteration of a residential property to be used as a guesthouse. Appellants seek reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
Appellants Kostek and Dunnigan are the registered owners of real property located at 4 Goodwin Street, Newport, Rhode Island and identified as Assessor's Plat 35 Lot 236. *Page 2 
(Amended Compl. at ¶ 12.) The two unit condominium is located in a zone known as Waterfront Business or "WB," pursuant to Newport Zoning Ordinance, § 17.56. Per G.L. § 45-24-39 and § 17.08.010 of the Zoning Ordinance for the City of Newport, the property is classified as a "legally non conforming structure," as it existed prior to the implementation of the Zoning Ordinance. More specifically, it is a structure "Non Conforming by Dimension," as it does not meet the Water Front Business District's requirements as to lot area, lot coverage, off street parking, side setback, and rear setbacks. (Dec. at 1.) Appellants, owners since the year 2006, have utilized the property for residential purposes, one of the many uses permitted in the Waterfront Business District.
On January 31, 2007, Appellants filed for a dimensional variance with the Newport Office of Planning, Zoning, and Inspections. (Application for Variance.) Appellants sought the variance in order to "convert the dwelling into a 4 bedroom guesthouse." (Application for Variance.) Although a guesthouse is another one of the many permitted uses in the Water Front Business District, Appellants sought a variance from the parking requirements of the Newport Zoning Code. (Application for Variance.) Section 17.104.020(T) of the Zoning Ordinance of the City of Newport states the following: "Guest houses and historic guest houses: one space for each guest bedroom, one space for the manager, and one space for every three employees all located on the same spot with the facility." Since Appellants had taken ownership in 2006, the property provided only one off street parking spot. (Tr. at 7.)
At some point prior to the Planning Board's meeting on May 21, 2007, Guy Weston, the Zoning Officer for the City of Newport (Zoning Officer) amended *Page 3 
Appellant's application, altering the prayer for relief to include a request for a special use permit in addition to the request for a dimensional variance. (Dec. at 2.) Neither Appellants nor their attorney at the time ever formally requested or objected to this action of the Zoning Officer, nor did they ever take leave to amend their petition to include the request for a special use permit. Nevertheless, the petition was advertised as one seeking a dimensional variance and a special use permit. See List of Abutters, Petition Number 7, dated 2/12/07. Thereafter, in May of 2007, the Planning Board for the City of Newport found the relief sought to be in conflict with the City's Comprehensive Plan and recommended that the Zoning Board deny Appellant's petition.[1] (Planning Board Memorandum, dated 5/22/07.)
A hearing was held regarding Appellant's petition for a variance and special use permit on August 27, 2007. At the outset of the hearing, counsel for the Appellant objected to the addition of a petition for a special use permit.[2] (Tr. at 5.) Regardless of what was applied for and who actually amended the petition to request a special use permit, the Board informed Appellants that they saw an "intensification with the non conforming element, not being able to provide the parking." (Tr. at 14.) The Board denied this objection and determined that Appellants would need a special use permit and a dimensional variance in order to properly transform the property into a guesthouse. (Tr. at 14.) *Page 4 
The hearing then focused on the substantive nature of the change sought and its potential effects on the surrounding area. First, the Board heard testimony from Appellant Dunnigan, who testified on the record that her aim in seeking the variance was motivated by a desire to change the "applicant pool" of potential renters. (Tr. at 32.) According to Dunnigan, if the relief was granted and the property was to obtain guesthouse status, she would be able to rent it to families, as opposed to the "young single professionals; unrelated parties" to whom she had been renting since she and Appellant Kostek took ownership in 2006. Id.
Dunnigan also presented a plan to alleviate the circulation and parking concerns expressed by the Planning Board and the objectors who expressed their opposition during the notice period. Dunnigan testified that both she and Appellant Kostek had plans to enter into a parking space rental agreement with the Wellington Resort Hotel, located some two blocks from the property. (Tr. at 33.) The plan was to obtain additional spaces for a seasonal price of $500 per spot and provide passes to her guests while staying at the property.Id.
Next the Board heard from two objectors.[3] First, Ms. Phyllis Perkins, a resident and property owner on Goodwin Street, informed the Zoning Board that she agreed with the Planning Board's decision and, more importantly, its reasoning in recommending that the petition be denied. (Tr. at 36.) Ms. Perkins testified that as it was, parking was at a premium on Goodwin Street and the surrounding area. (Tr. 37.) She feared that this tentative and, in her opinion, speculative agreement with the Wellington Hotel was no solution to the potential problems. (Tr. at 38.) Furthermore, she stated that "all uses are *Page 5 
not created equal," and although this use may be listed as permitted in the Zoning Ordinance, its effects would create "a quagmire of difficulties that are unacceptable." (Tr. at 37.) From her experience, she opined that long term renters provide more stability to the neighborhood and are far more manageable and easier to police than the transient visitors who stay at guesthouses. (Tr. at 38.)
The next objector was Mr. Ben Riggs a property owner residing at 15 Harrington Street, which runs parallel to Goodwin Street. (Tr. at 46.) Mr. Riggs informed the Board that his objection was being placed on the record, both on his behalf and that of the Harrington Wharf Condominium Association of which he was treasurer. (Tr. at 47.) Mr. Riggs echoed the sentiments of Ms. Perkins and the Planning Board, and he pointed out a potential flaw in Appellants' proposed solution to the parking issue. (Tr. at 48.) He explained that since the rented parking was to be some two blocks away at the Wellington Hotel, transient visitors would first search the streets nearby to find parking, and only utilize the rented spots if there was no street parking. (Tr. at 49.) According to Riggs, granting Appellants' request would exacerbate existing parking problems as he recalled many instances in which police and tow vehicles had to be called in response to vehicles blocking driveways on Goodwin and Harrington Streets. (Tr. at 50.) He also testified that a number of elderly persons lived on Goodwin and the nearby streets; increased street parking, he argued, would make it more difficult for the ingress and egress of emergency vehicles. Id.
Next the Board had questions for Appellant Dunnigan. (Tr. at 54.) First, the Board noted what they perceived to be Appellant's financial motive for the petition. Id. The Board's Chairman stated, "[w]e recognize what you are doing, I see it right now, it's *Page 6 
very clear, you are using a use, a residential use, one of the two family residential uses, to allow yourself short-term rentals under the guise of a guesthouse. I think it's a blatant attempt to use a residential use to get weekly, monthly and daily rentals." (Tr. at 55.) Secondly, the Board had concerns over how the property was to be policed and maintained as a transient visitor's quarters. (Tr. at 56.) In response, Appellant Dunnigan informed the Board that both she and Appellant Kostek would be in the area frequently — "at least once a week" — and that they planned to make arrangements with local agents to provide managerial services when needed. (Tr. at 57.)
Although there was much discussion over the need for a special use permit, the Board's unanimous decision in denying the permit was seemingly based on the statutory requirements for granting a dimensional variance. See § 45-24-41. As noted above, the Board had already made clear that they saw this application as a way for Appellants to increase rents. In addition, Board members expressed concern with the congestion that eight simultaneous boarders — who would be permitted in a four bedroom guesthouse — would have on an already congested area. (Tr. at 69.) According to one Board member, "[i]t's just an impossible situation to think that eight more parking spaces can fit in that area." Another remarked, "I live in that neighborhood; I know the congestion in that neighborhood. I think the parking is going to affect the area." Id.
Board members also noted on the record that in denying the petition, they perceived no hardship or inconvenience befalling the Appellants. One member, speaking directly to the Appellants, stated, "I don't think you're (sic) having to keep it as normal rental unit or use it [your]selves rather than as a guesthouse, is much of an inconvenience at all, actually or more than a mere inconvenience." (Tr. 70.) *Page 7 
In conclusion, the Board found that the petition was motivated by pecuniary gain,
granting the petition would only add to an already congested area of Newport, and the petition failed to prove that a denial would amount to more than a mere inconvenience. Therefore, the petition was denied. A formal written Decision was issued on January 8, 2008. Appellants appealed.
 Standard of Review
The Superior Court review of a zoning board decision is controlled by G.L. 1956 § 45-24-69(D), which provides:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v.Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than *Page 8 
a preponderance." Caswell v. George Sherman Sand and Gravel Co.Inc., 424 A.2d 646, 647 (R.I. 1981) (citing Apostolou,120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n,Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town ofNarragansett v. International Association of Fire Fighters, AFL-CIO,Local 1589, 119 R.I. 506, 380 A.2d 521 (1977)).
 Analysis
On appeal, Appellants seek a reversal of the Board's decision. Specifically, they argue that the Board acted in excess of its authority and its decision was erroneous in light of statutory authority. Based on a thorough review of the record, this Court determines that the Board's decision was made upon unlawful procedure.
In hearings before local zoning boards, it is a petitioner's application which "states the grounds on which [he or she] bases [his or her] request for relief. . . ." Gardiner v. Zoning Boardof Review Of City of Warwick,101 R.I. 681, 683, 226 A.2d 698, 700 (1967). The application form used by Appellants in the case at bar is titled "Application for Dimensional Variance." The term, special use, or special exception, is nowhere to be found on said application. Furthermore, the application makes it clear that in considering Appellants' request for relief, the Board was to apply only the standards for granting a dimensional variance.[4] (Application for Variance.) *Page 9 
As noted earlier, upon receipt and review, the Newport zoning officer amended this application to include a petition for a special use permit. However, nowhere in § 45-24-54 of the General Laws or in § 17.112.010 of the Newport Zoning Code — which outlines the duties of a zoning officer — is there any language granting zoning officers the authority to amend a petitioner's application.[5] At the hearing, speaking directly to the *Page 10 
zoning officer, who was present, the Board's chair asked, "[j]ust for a point of clarification, here, I am looking at this application, we don't have the second application [requesting a special use permit ] in here." (Tr. at 24.) Appellants' counsel remarked, "to my knowledge [that request] was added by the Town."Id. The Zoning Officer's decision to alter Appellants' application was in excess of his powers under the ordinance and marked the starting point of the procedural deficiencies in this matter. This alteration led to the Planning Board's recommendation based upon a request for a special use permit. Furthermore, it led to the hearing being noticed and advertised as a petition seeking a special use permit as well as one for a dimensional variance.
It is a well-settled principle that notice of the hearing must advise, among other things, "the precise character of the relief sought." Carroll v. Zoning Board of Review of City ofProvidence, 104 R.I. 676, 679, 248 A.2d. 321, 323 (1968). Again, the Appellants' petition reflects only a request for a dimensional variance; public advertisement for the application which included a request for a special use permit was a procedural error.
Our Supreme Court's "notice deficiency" analyses mainly concern the due process rights of the abutters and the general public.Cugini v. Chiaradio, 96 R.I. 120 123, 189 A.2d 798, 801 (1963) *Page 11 
(citing Mullane v. Central Hanover Bank Trust,339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to be heard.")); seealso Carroll supra; Zeilstra v. Barrington ZoningBoard of Review 417 A.2d 303, 307 (R.I. 1980). With respect to the concept of notice, the Supreme Court has made clear that unless the notice contains the "precise character of the relief sought bythe application . . . [the notice] will not serve the purpose for which [the hearings] are held that is to assist the board to do substantial justice to an applicant. . . ." Mello v. Board ofReview of the City of Newport,94 R.I. 43, 49, 177 A.2d 533, 535 (1962) citing Kent v. ZoningBoard of Review, 74 R.I. 89, 58 A.2d 623 (1948) (emphasisadded). Therefore, anything placed on the record or considered by the Board dealing with or concerning a special use permit and its requirements cannot be deemed legally competent evidence and should therefore not have entered into the Board's decision making process.See generally Lumb v. Zoning Board of Review of Town ofBristol,91 R.I. 498, 502, 165 A.2d 504, 507 (1960) cert.denied; see also Kraemer v. Zoning Board ofCity of Warwick, 98 R.I. 328, 331, 201 A.2d 643, 644 (1964) ("the variance and [use] exception are designed to meet two entirely different needs").
In the instant matter, the request for a special permit was not properly before the Board. As Appellant's counsel stated in her initial objection, "I just think, as the objection comes from a notice perspective, where we didn't apply for the special use permit . . . and the reason[ing] for the special use permit is a little muddy and I'm not sure it's completely clear." (Tr. at 29) Indeed, the issue was so muddled that many Board *Page 12 
members sought to clarify their confusion at the hearing. One asked, "so that I can make sure I am on the same page, what are we arguing —" (Tr. at 25.) Another opined, "maybe I'm looking at the wrong application here . . . the application itself is not reflecting what the Applicant is asking for." (Tr. at 24.) The Chairperson at one point stated, "So this is really an application for a dimensional variance. . . ." (Tr. at 25.) The Board's treating the petitioner's application as one seeking a special use permit was in excess of its statutory authority and constituted unlawful procedure.
In its final Decision, the Board denied both a request for a special use permit and a request for a dimensional variance. However, it is well settled that a zoning board must present its "findings of fact and [its] application of legal principles in such a manner that a judicial body might review [the Decision] with a reasonable understanding of the manner in which evidentiary conflicts have been resolved and the provisions of the . . . ordinance [had been] applied." Thorpe v. Zoning Board ofReview of North Kingstown, 492 A.2d 1236, 1237 (R.I. 1985). Here, the final written Decision only reflects the confusion with respect to the request for and standards for granting such relief.
Accordingly, this matter is remanded to the Board for a new hearing. If the make up of the Board has changed since August of 2007, it shall be reconsidered by the Board's current membership. Bellevue Shopping Center Assocs. v. Chase,556 A.2d 45, 46, (R.I. 1989).
 Conclusion
Accordingly, after review of the entire record, this Court finds the decision of the Board to be in excess of its statutory authority and affected by procedural error. Substantial rights of Appellants have been prejudiced. Accordingly, this matter is *Page 13 
remanded to the Newport Zoning Board for a newly advertised hearing on the original petition submitted for the dimensional variance. This decision in not to be interpreted as meaning that Appellants are entitled to a dimensional variance or any other relief. That is up to the Zoning Board to decide.
[1] Specifically, the Planning Board found that the requested relief would conflict with numerous tenets of the Comprehensive Plan. Among them were preserving the characteristics of the neighborhood, minimizing the negative effects of pedestrian and vehicular traffic, and providing the residents and visitors of Newport with a sufficient number of public parking spots. (Planning Board Memorandum dated 5/22/07.)
[2] Appellant had obtained new counsel about two months prior to the hearing date. See Withdrawal of Appearance, dated July 23, 2007.
[3] Although the Board heard from two objectors, there were approximately 15 objecting letters filed with the Board during the notice period.
[4] On the subject of granting a dimensional variance, zoning boards, and the ordinances that create and govern them, are guided Section 45-24-41 of the Rhode Island General Laws which provides:
 "(c) In granting a variance, the zoning board of review requires that evidence to the satisfaction of the following standards is entered into the record of the proceedings: (1) That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16); (2) That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain; (3) That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and (4) That the relief to be granted is the least relief necessary."
[5] With respect to the duties of a zoning officer § 17.112.010. reads in pertinent part:
 B. The zoning officer's responsibilities shall include:
 1. Issuing zoning certificates and zoning permits;
 2. Reviewing and approving building permits for zoning compliance;
 3. Collecting required fees for applications for signs, variances, special use permits, and to the historic district commission;
 4. Receiving and reviewing for proper form, all applications for variances, appeals and special use permits;
 5. Transmitting all applications to required agencies for comments/approval;
 6. Keeping records on compliance of uses of land;
 7. Inspecting suspected violations and issuing violation notices;
 8. Authorizing commencement of uses or development under the provisions of this zoning code;
 9. Collecting fines for violations;
 10. Maintaining and updating the text and zoning map comprising this zoning code; changes which impact the zoning map shall be depicted on the map within ninety (90) days of the authorized changes;
 11. Reviewing the zoning code at reasonable intervals; and whenever changes are made to the comprehensive plan, identifying any changes necessary to the zoning code and forwarding such changes to the city council;
 12. Upon written request, the zoning officer shall, in order to provide guidance or clarification, make a determination on issues of compliance, applicability, interpretation and completeness as pertaining to the application within fifteen (15) days of receipt of request. In the event that no determination is provided within such time, the requesting party shall have the right to appeal to the zoning board of review for such determination. *Page 1